[Civ. No. 16485.   Second Dist., Div. One.   Nov. 12, 1948.]

Estate of GEORGE E. HOWE, Deceased. MYRA B. HOWE, Appellant, v. JOHN C. NETZ, as Executor, etc., et al., Respondents.

Powers & Bernard and W. A. Strong for Appellant.

Charles E. Beardsley for Respondents.

DORAN, J.—The decedent, George E. Howe, and appellant, Myra B. Howe, were married in July, 1932. George E. Howe died testate on December 5, 1944, the appraised value of the estate being in excess of $400,000. The inventories, however, failed to disclose what portions of the estate were separate and community property. On March 28, 1947, appellant filed a petition to determine heirship; the executor, on appellant's demand, furnished certain facts and figures bearing on the issue of community and separate property, but filed no pleading or other response to appellant's petition.

On July 15, 1947, a stipulation was entered into between the appellant widow, the respondent executor John C. Netz, and the legatee respondent Alvin Langdon Coburn, by which it was agreed that "no more nor less than $50,000.00 of the amount of property left by decedent at the time of his death constituted community property of decedent and the widow, and that by reason of the California Community Property Law the widow (appellant) is entitled to have, as her share of said community property, the sum of Twenty-Five Thousand Dollars ($25,000.00), which shall be separate and apart from, and over and above, the amounts coming to her under the provisions of the Last Will and Testament of the decedent." The stipulation, which recites that the parties are desirous of making "an early and amicable settlement" of their

"various disputes," provides that upon "distribution to her of her ratable share of the within estate, and of a portion of the community property which is hereinbefore mentioned, . . . the family allowance to the widow of $400.00 per month shall be terminated forthwith." At the conclusion of the stipulation it is stated that "Each of the parties hereto acknowledges that he or she has had independent legal advice in the negotiation and preparation of this agreement."

The above stipulation was filed as a part of the executor's Third Current Account, which account was settled and allowed, the order therefor providing that said stipulation "is hereby approved by the court." It was further ordered, "regarding the portion of the petition before the Court pertaining to the distribution to Myra B. Howe, widow of the decedent, of the sum of $25,000.00, which has heretofore been adjudicated as her share of the community property of the decedent, and regarding the petition for termination of the family allowance of $400.00 per month, . . . that both of those matters shall stand submitted to the Court for later decision."

Thereafter, legatee Coburn filed a petition which, in the language of appellant's brief, prayed "for an order charging against the $50,000.00 community property the sum of $14,000.00, being the amount therefore paid to Myra B. Howe as widow's allowance." On November 3, 1947, the court made a supplemental order in effect granting the Coburn petition, and providing that the widow's stipulated community property interest of $25,000 should be diminished by $7,000 or one-half of the $14,000 which had been previously paid as widow's allowance at the rate of $400 per month. Under this order the widow, appellant herein, would receive only the sum of $18,000 in place of the stipulated $25,000. The appellant then filed a petition to set aside the order of November 3, 1947, and praying an order in conformity with the stipulation. The last-named petition was denied on December 23, 1947, and the present appeal followed.

The estate here involved has been before this court on a previous appeal in *Estate of Howe*, 81 Cal.App.2d 95 [183 P.2d 329], in reference to a prenuptial agreement entered into by decedent and the appellant. It was there held that the widow's right to a probate homestead was foreclosed by the prenuptial agreement declaring that neither party should "at any time" claim "any interest" in the separate property of the other. The order of the probate court granting the widow a family allowance of $400 per month was, however,

affirmed, the opinion stating that "the record on appeal is silent as to whether there was community property from which it could be paid. The parties were married about 13 years before the husband died and it therefore must be assumed that there was evidence to support the court's order to that effect."

It is appellant's contention "that the Supplemental Order of November 3, 1947, charging against the (stipulated) $50,000.00 community property, the sum of $14,000.00 the amount of the widow's allowance theretofore paid, is void and should be set aside for the following reasons: I. The court was without jurisdiction to make said order. II. Said order is contrary to the terms of the Will and the Stipulation of the parties. III. No Findings of Fact to support said order were made or filed."

Respondent, on the other hand, maintains that the probate court had jurisdiction to order that the widow's allowance be charged against the community property including the widow's share thereof, and that such order was not in conflict with the stipulation nor with a direction in testator's will that debts should be paid from the estate.

Pertinent statutory provisions are found in section 202 of the Probate Code to the effect that "Community property passing from the control of the husband, either by reason of his death or by virtue of testamentary disposition by the wife, is subject to his debts and to administration and disposal under the provisions of Division III of this code." Division III therein referred to, contains the provisions having to do with family allowance, and by section 300 makes "all" of a decedent's property subject "to the control of the superior court for the purposes of administration, and . . . chargeable with the expenses of administering his estate . . . *and the allowance to the family.*" (Italics added.) Section 680 provides that "The widow and minor children are entitled to such reasonable allowance *out of the estate* as shall be necessary for their maintenance according to their circumstances, during the progress of the settlement of the estate. . . . Such allowance must be paid in preference to all other charges, except funeral charges, expenses of the last illness and expenses of administration, . . ." (Italics added.)

The pivotal inquiry involved in the present appeal is whether the order of the probate court charging the widow's stipulated share of community property with one-half of the widow's allowance previously paid pending administration,

is in conflict with the written stipulation signed by all the interested parties, and hence invalid. This stipulation, hereinbefore set forth, expressly provides that "no more and no less than $50,000.00" of the husband's estate should be deemed community property, and that "the widow (appellant) is entitled to have, as her share of said community property, the sum of Twenty-five Thousand Dollars $25,000.00) which shall be separate and apart from, and over and above, the amounts coming to her under the Last Will and Testament of the decedent."

No provision concerning reimbursement to the estate for any portion of the widow's allowance previously paid to appellant is contained in said stipulation. It is, however, evident that the matter of the widow's allowance was under consideration by the parties, for the stipulation provides that upon "distribution to her of her ratable share of the within estate, and of a portion of the community property which is hereinbefore mentioned. . . . the family allowance to the widow of $400.00 per month shall be terminated forthwith."

That the interested parties possessed the right to stipulate concerning the amount to be considered community property and to determine the widow's share of such property, there can be no doubt. So long as the stipulation was not illegal nor contrary to public policy, it was the duty of the probate court to consider as finally settled all matters therein agreed to. There is no contention here that the stipulation in question is invalid. However, as in all contractual matters, the reasonable interpretation of the agreement must govern, and it is upon such an interpretation that the order made must stand or fall.

Consideration of the language employed in drafting the stipulation and of the surrounding circumstances, leads to the conclusion that only by a forced and entirely unreasonable interpretation can the stipulation mean anything other than that the widow is to receive the sum of $25,000 without deduction. There is nothing contained within the four corners of the document which would indicate otherwise. And, as hereinbefore mentioned, the avowed purpose of the stipulation was to make "an early and amicable settlement" of the "various disputes." It is fundamental that the law approves of such settlements, and that the courts seek to sustain rather than to overturn such compromise measures.

As hereinbefore mentioned, each of the parties to the stipulation acknowledged "that he or she has had independent

legal advice in the negotiation and preparation of this agreement.'' It cannot well be doubted, therefore, that the various legal ramifications of the controversy had received adequate consideration, or that the language employed in the stipulation was chosen advisedly. Since the widow had already received $4,000 by way of the family allowance, this important matter must have been in contemplation. That it was actually so considered is made quite certain by the stipulated provision that the widow's monthly allowance ''shall be terminated forthwith'' upon ratable distribution and payment of the community property interest specified in the stipulation. Had the signatory parties intended that this widow's allowance already paid, or any part of it, was to be deducted from the $25,000 declared to be the widow's ''share of said community property,'' it would have been a simple matter to have so stated. Since the stipulation did not so provide, it can only be assumed that the parties intended there should be no such deduction. To hold otherwise would be to write into the contract something which the parties had not seen fit to include. This, no judicial tribunal, whether of trial or appellate jurisdiction, is empowered to do.

In this connection may be noted the case of *Estate of King*, 19 Cal.2d 354, 362 [121 P.2d 716], holding that ''The right of a widow to receive a family allowance [under Prob. Code, § 680], pending the administration of the estate is purely statutory,'' and that such an allowance is a charge against any available assets, whether community or separate, in the absence of some provision or designation in the will. The widow's statutory one-half interest in community property, in the language of section 201 of the Probate Code, ''belongs to the surviving spouse.'' While it is true, as stated in respondent's brief, that the King case is factually different from the instant situation, the principles therein enunciated are undoubtedly sound. Moreover, the interpretation of the stipulation in the present case, hereinbefore referred to, is consistent with such principles. That the order of the probate court was in conflict with those principles and with the manifest intention of the interested parties cannot well be doubted. It is unnecessary to discuss the other contentions offered on this appeal.

The order of November 3, 1947, charging the appellant's half interest in the community property with one-half of the widow's allowance previously paid, is reversed with directions

to enter an order in conformity with the stipulation of the parties, which order shall provide that the widow, Myra B. Howe, be paid the full amount of $25,000 as the stipulated half of the community property, the same to be paid without deduction of the amount advanced for family allowance.

York, P. J., and White, J., concurred.