[Civ. No. 7032. Fourth Dist. Nov. 15, 1962.]

Estate of BINA F. RINKER, Deceased. ELMER Y. RINKER, Petitioner and Appellant, v. ARTHUR M. KIEF, Contestant and Respondent.

David N. M. Berk for Petitioner and Appellant.

Tenney & Collins and Jack B. Tenney for Contestant and Respondent.

GRIFFIN, P. J.—This is an appeal from a judgment on special defenses in favor of Arthur M. Kief, petitioner, respondent and contestant (hereinafter referred to as respondent) and against Elmer Y. Rinker, contestant, petitioner and appellant (hereinafter referred to as appellant). The judgment recites that the holographic will of decedent Bina F. Rinker, dated January 1, 1947, may be "offered for probate" and denies probate to a witnessed will dated April 18, 1949. The appellant Elmer Y. Rinker is the former husband of the decedent and the sole devisee under the witnessed will.

It appears from the brief record that the testamentary provisions of the holographic will are as follows:

"Well we'll all be dropping off soon so, I do not care when my time comes. I'll not be missed and I want Arthur to have everything that I worked for—Just keep this just in case it happens unexpected."

These words appeared in a letter written by the decedent, which letter was signed and dated. The witnessed will appears to be in an approved form and it leaves all the property of the decedent to "my husband, Elmer Y. Rinker," the appellant.

It is indicated that the deceased was confined to Patton State Hospital as a mental patient from about September 1952 until her death on October 15, 1960, with the exception hereinafter noted. There is an indication in the record that while she was in the mental hospital the appellant obtained her signature to quitclaim deeds, transferring from her most of the real property held by them as community property. On February 6, 1957, appellant filed his verified complaint for divorce, alleging that the decedent had willfully deserted him and treated him with extreme cruelty. The decedent was served with the summons and complaint at the hospital on February 13, 1957. On March 19, 1957, appellant filed a dismissal of the action.

Between April 25, 1957 and June 1, 1957, decedent was placed by the appellant in a private sanitarium in Banning, California. During this time, he filed another verified complaint for divorce, alleging extreme cruelty, and obtained decedent's signature on a stipulation that the case might be heard as a default and waiving notice of further proceedings. This was filed in the superior court on May 21, 1957 and appellant obtained an interlocutory judgment of divorce thereon. The final decree was entered on May 26, 1958, and on November 22, 1958, appellant married Roby Lou Schrink, to whom most of the property of appellant and decedent had been conveyed prior to appellant's divorce from decedent. The action for divorce alleged that the only community property of the parties was household furniture and furnishings and the family residence located in Beaumont. By the decree, appellant was awarded this property.

Thereafter, on March 31, 1959, respondent, who was decedent's brother, filed an action on decedent's behalf against appellant and Roby Lou Schrink, seeking to recover decedent's share of the community property and to set aside the divorce decree in respect to the community property. On April 7, 1960, appellant entered into a stipulation with respondent in open court resulting in a decree which provided, among other things:

". . . and the title of Plaintiff Bina F. Rinker to each and every item of said property described or referred to in said paragraphs be and the same is hereby quieted against any and all claims of said defendants or either of them and all persons claiming through or under said defendants or either of them, and said defendants, Elmer Y. Rinker and Roby Lou Shrink Rinker, and each of them, and all persons claiming through or under them, or either of them, other than Plaintiff Bina F. Rinker, be and they are hereby forever debarred, restrained, and enjoined from asserting any right, title, interest, or claim in or to or upon any of said property."

After decedent's death, appellant and respondent filed the two wills for probate and the instant contests are the result of the court's determination of the effect of the stipulated decree of April 7, 1960. The trial court held that appellant was estopped by this decree to offer the will of April 18, 1949, for probate. It found that the contest of appellant should be dismissed and that the will of January 1, 1947, was entitled to be offered for probate. Judgment was entered accordingly. Appellant appeals from this judgment.

The main issues on this appeal are: Is the appellant barred by the decree of the court from claiming under the will dated April 18, 1949, and (2) if so, was the letter a holographic will, or does it lack the testamentary character required of such documents?

It is appellant's contention that the purported holographic will lacks the testamentary character required of such documents, because the purported expression of a desire to dispose of property on death was in fact only a brief comment in a long and gossipy letter. He also contends that the stipulation and decree entered into on April 7, 1960, do not bar him from claiming under the earlier will by which decedent left her property to him, because the decree was not entered with the possibility of this expectancy in mind.

Respondent argues that the purported holographic will is in fact a testamentary document and also argues that by presenting the second will for probate the appellant has in fact asserted a right, title, interest or claim to the identical property which was involved in the earlier decree and that such an assertion is barred by the terms of the decree as res judicata.

Respondent, as contestant to the will of April 18, 1949, in addition to the special defenses above mentioned, also alleged that decedent was not of sound mind at the time; that she was acting under the undue influence of Elmer Y. Rinker; that at the time of the entry of the stipulated decree, Rinker knew of the above mentioned will of April 18, 1949, which was secretly in his custody, but he at all times denied that decedent had made a last will and testament. Fraud is alleged in this connection and in connection with a general scheme to obtain the property of decedent by this means and otherwise. No trial was had upon these issues, since the trial court decided in favor of respondent on the special issues first tried under Code of Civil Procedure, section 597.

The general rule is that the courts, with certain exceptions: ". . . while taking into consideration all relevant circumstances tending to throw light on the testator's intention, refrain as a rule from holding that a divorce or annulment alone, in the absence of a specific statute to the contrary, affects in any way a will previously executed by a husband or wife"; and that where the statute on revocation of wills does not include the exceptions, the position is generally taken that the common-law doctrine of implied revocation does not obtain in the state; that the statutory methods of revocation are exclusive; and that unless the statute provides that a divorce

shall have some effect upon a prior will of husband or wife, it will be held to have none, whether the divorce was coupled with a property settlement or alimony, or not. (18 A.L.R.2d 699-670, § 1.)

This question was before our courts in *Estate of Patterson,* 64 Cal.App. 643 [222 P. 374], where it was held that where a husband and wife make concurrent wills, each in favor of the other, and thereafter they effect a settlement of their property rights and, in a subsequent divorce proceeding in which a decree is rendered in favor of the wife, such settlement is confirmed and adopted by the court as being in full of all claims of each against the other, and the divorced wife then destroys her will, the will of the divorced husband is not thereby revoked and the divorced wife is not estopped from probating or claiming under said will. (See also *Estate of Comassi,* 107 Cal. 1 [40 P. 15, 28 L.R.A. 414].) Section 74, Probate Code, provides:

"Except as hereinabove provided, no written will, nor any part thereof, can be revoked or altered otherwise than: . . ." by an instrument executed with the same formalities or by cancellation, defacing, destroying, etc. In construing Probate Code, section 74 (formerly Civ. Code, § 1292, and Code of Civ. Proc., § 1970), the court said:

"The effect of these provisions is to do away with the doctrine of implied revocation, which was for so many years a subject of controversy in the English courts, and which in many of the states of this country is still permitted, under a clause in their statutes authorizing a revocation to be 'implied by law from subsequent changes in the condition or circumstances of the testator.' " (*Estate of Comassi, supra,* 107 Cal. 1, 5.) See also 18 A.L.R.2d p. 697. In *Estate of Brannon,* 111 Cal.App. 38 [295 P. 83], it was held that a judicial severance of the marital relations by decree of divorce does not create an altered condition affecting the validity of prior testamentary dispositions. In *In re Courvoisier's Will,* 55 N.Y.S.2d 277, it was held that the doctrine of implied revocation of wills by reason of subsequent change in condition or circumstances of a testator does not prevail in New York, and that the asserted inability of the testatrix, by reason of insanity, to change or revoke the will bequeathing the residuary estate to her husband after annulment of the marriage could not be considered in determining whether such annulment of the marriage affected the bequest of the residuary estate. See also *In re De Nardo's Will,* 268 App.Div. 865 [50 N.Y.S.2d 561].

With this approach, can it be said that the stipulated decree in the instant case was such a writing or decree that would preclude appellant from taking property under the will of decedent, which will was made April 18, 1949, on the theory that the quiet title action forever debarred, restrained and enjoined appellant from asserting any right or interest in said property?

Notwithstanding the factual justification for depriving appellant of the right to inherit under the will of deceased, we feel impelled to be guided by the authorities on the subject as to the legal effect of this decree and of appellant's right to take under the will, if it is otherwise valid. Neither counsel has cited an identical precedent. The general rule is that in order to estop or bar appellant's right to inherit or take under a will, the judgment should have included a statement to the effect that appellant waived all right and claim of inheritance to succeed to any part of the property as an heir or successor at law, upon or in the event of death. Any language similar to the foregoing is conspicuous by its absence. The precedent most easily found is where a husband and wife, having entered into a property settlement agreement, subsequently obtain a divorce wherein the property settlement agreement is *incorporated into the decree,* and later, when one of the spouses dies without having revoked a will by which the surviving spouse would take, a contest similar to this would take place. In *Estate of Crane,* 6 Cal.2d 218 [57 P.2d 476, 104 A.L.R. 1101], it was held that a property settlement agreement between husband and wife, upon separation, providing in substance that neither would oppose the probate of the other's will or contest it or apply for letters of administration or letters of administration with the will annexed upon the estate of the other, and in which the parties agreed that they had settled, adjusted and forever determined all of their respective rights in any inheritance from one another, or in the estate of the other, although the agreement took from the wife all right in the property of the husband, either by virtue of her status as widow or his heir, it did not take from her the right to a bequest in his will, notwithstanding it was executed prior to the agreement. In *Estate of Buchman,* 132 Cal.App. 2d 81, 92 [281 P.2d 608, 53 A.L.R.2d 451], it was held that general expressions or clauses in property settlement agreements are not to be construed as relinquishment or divestment of expectancy to take by will, unless that is the clear and unmistakable import of the language. (See also *Estate of*

*Bartolo,* 124 Cal.App.2d 727, 728 [269 P.2d 30]; *Estate of Hadsell,* 120 Cal.App.2d 270, 272 [260 P.2d 1021]; *Estate of Johnson,* 31 Cal.App.2d 251, 258 [87 P.2d 900]; *Nichols* v. *Board of Retirement,* 121 Cal.App.2d 176, 180 [262 P.2d 862]; *Grimm* v. *Grimm,* 26 Cal.2d 173, 176 [157 P.2d 841]; *Bennett* v. *Forrest,* 24 Cal.2d 485, 493 [150 P.2d 416]; *Shaw* v. *Board of Administration,* 109 Cal.App.2d 770, 776 [241 P.2d 635].) *Estate of Crane, supra,* 6 Cal.2d 218, set forth the considerations that commend the rule that expectancies under a will or an insurance policy are regarded as waived only when it appears that the attention of the parties was directed to such expectancies, and their intention to disclaim future rights that might develop from such expectancies was made clear in the contract, and that since the husband has the power to revoke his will or to change the beneficiary named in an insurance policy, his failure to do so ordinarily indicates that he did not wish to effect a change, so that in effect his failure to act amounts to confirmation of the will or the designation of the wife in the insurance policy. The instruments are to be read as expressing the decedent's intentions at the time of his death. (*Estate of Buchman, supra,* 132 Cal.App.2d 81, 94.) In *Estate of Hadsell, supra,* 120 Cal.App.2d 270-271, it was held that a property settlement agreement by a wife, relinquishing all right to any interest in her husband's estate, was not inconsistent with the husband's will, executed before the agreement, leaving his property to her; that the relinquishment amounts to nothing more than leaving the decedent free to dispose of his property as he pleases.

A stipulated judgment is as conclusive of the matters in issue and determined by it as a judgment rendered after trial. (*Rogers* v. *Springfield Fire etc. Ins. Co.,* 92 Cal.App. 537 [268 P. 679].) The judgment in an action is not evidence, conclusive or otherwise, of matters that are not involved in the proceeding and not determined by it. Generally speaking, matters that were not in issue in the previous action are not res judicata. (*Lang* v. *Lang,* 182 Cal. 765 [190 P. 181]; 29 Cal.Jur.2d § 237, p. 197.)

It is apparent that the judgment in the action relied upon was based on a cause of action against appellant and Roby Schrink Rinker to set aside certain deeds, declare the divorce judgment void, establish a trust, to obtain an injunction and an accounting and to quiet title to the property on the ground of fraud, etc.

The judgment awarded certain property to appellant, gave

other relief, and ordered him to transfer certain property to plaintiff Bina F. Rinker. It also modified the decree of divorce and held that after said transfer neither defendant had any right, title, interest or claim to said property. The decree does not determine that thereafter appellant would have no right to inherit said property from decedent or otherwise acquire it. Appellant made no claim to the right of inheritance of said property by will or otherwise at the time of the action and that right was not specifically adjudicated by it. It therefore cannot be said, as a matter of law, that appellant was barred from taking under the will by virtue of the quiet title decree alone. Since the validity of the witnessed will is still in question, the force and effect of the prior will remain undetermined. A trial should be had upon the remaining issues set forth in the contest of the respondent and, if necessary, also the issues in reference to the contest of appellant.

Judgment reversed.

Shepard, J., and Coughlin, J., concurred.