[Civ. No. 45105. First Dist., Div. Two. Apr. 26, 1979.]

Estate of PETER HERBERT MURPHY, Deceased.
GARY BERRYESSA et al., Petitioners and Appellants, v.
J. FRANK MURPHY et al., Objectors and Respondents.

---

**COUNSEL**

Wyckoff & Miller and Stephen Wyckoff for Petitioners and Appellants.

Frank Murphy for Objectors and Respondents.

---

**OPINION**

**TAYLOR, P. J.**—Gary Berryessa and Rene Deane, the contingent beneficiary and trustee, respectively, of a testamentary trust, appeal from a decree denying their petition for heirship and determining that the decedent's only heirs at law, his parents, J. Frank Murphy and his wife Marjorie, were the only persons entitled to the estate. The principal question presented is whether any of the documents executed by Marilyn Murphy, the testator's former wife, constituted a disclaimer of her interests in the decedent's estate, pursuant to Probate Code sections 190-190.10.[1] For the reasons set forth below, we have concluded that the trial court properly concluded that the marital settlement agreement and Marilyn's assignment of her interest to the decedent's parents were valid.

The court found the pertinent facts as follows: When Peter Murphy died on May 25, 1977, he was a single person and had no issue. He had executed a will on February 23, 1972, leaving his entire estate to his then wife Marilyn. The will also provided that if Marilyn did not survive him by 180 days, Deane, as trustee for Berryessa (Marilyn's then minor son by a prior marriage), would succeed to the estate. Marilyn survived decedent by 180 days.

---

[1]These provisions were added by Statutes of 1972, chapter 990, and were not changed in a major way by the extensive 1975-1976 amendments to the Probate Code; minor changes in Probate Code sections 190.3 and 190.9 were made by Statutes of 1976, chapter 860, sections 1 and 2, respectively.

The decedent and Marilyn were finally divorced on June 25, 1976. The decree of dissolution adopted, ratified and approved a marital settlement agreement dated December 29, 1975, which provided, so far as here pertinent: "9. *Each of us waives and renounces any and all rights to inherit the estate of the other at the other's death,* or to receive any property of the other *under a Will executed before the effective date of this Agreement,* or to claim any family allowance or probate homestead from the other's estate, *or to act as executor* or other personal representative under the Will of the other executed before the effective date of this Agreement, or to act as administrator, or as administrator with the Will annexed, of the other's estate except as a nominee of another person who is legally entitled to make nominations for administrator" (italics added). The decree directed the parties to perform the agreement.

On June 2, 1977, and prior to the filing of the petition for probate, J. Frank Murphy and Marjorie L. Murphy and Marilyn Murphy executed the following agreement: "*In consideration of Marilyn Y. Murphy's disclaimer of interest* under the *will* of said decedent in the Estate of Peter H. Murphy *made in pursuance of the property settlement agreement* between her and the decedent:

"*We,* the undersigned, *agree* to give and deliver to her or her assigns one-fifth (1/5) of all property or moneys received by us or either of us from the estate of said decedent at the time of the distribution thereof. In the event of her death the same shall be given to Gary Murphy.

"*We consent to her appointment as executor* of said estate.

"This agreement shall bind on executors and administrators." (Italics added.)

However, this agreement was not filed by Marilyn in the probate proceedings or at all. After the death of decedent, but prior to the execution of the above quoted document, Marilyn had secured the advice of an attorney who was independent of any interest or issue involved in these proceedings.

Subsequently, pursuant to the above quoted June 2, 1977, agreement, Marilyn petitioned and was appointed executrix of the estate; J. Frank Murphy was her attorney. On January 24, 1978, Marilyn, as executrix, and J. Frank Murphy, as preparer, executed an inheritance tax declaration (Form IT-22) and attached a copy of the will and the marital

settlement agreement. So far as pertinent, the inheritance tax declaration stated: "Marilyn Y. Murphy named in said Will although she survived the decedent by over 180 days and would under the terms and provisions of said Will have been entitled to receive the estate of said decedent, *has by reason of the execution of said property settlement agreement surrendered all right to receive any property under the Will of said decedent.*" (Italics added.) The state inheritance tax department accepted this declaration and charged all inheritance taxes to J. Frank Murphy and Marjorie, as heirs at law. No inheritance tax report or order fixing inheritance taxes has yet been filed in these proceedings.

On February 23, 1978, Marilyn filed the following document in the probate proceedings: "I, Marilyn Yvonne Murphy, also known as Marilyn Y. Murphy, former wife of the above decedent, do hereby pursuant to the Settlement Agreement between myself and the decedent dated December 19, 1975, and particularly paragraph 9 thereof, *disclaim any interest in the estate of said decedent under his will dated February 23, 1972, reserving, however, the right to continue to act as executrix of said will and reserving also any rights* otherwise acquired in said estate" (italics added). This document was prepared by the attorney for Deane and Berryessa and given to Berryessa by his attorney. No testimony was offered concerning what was meant by "any rights otherwise acquired in said estate."

On March 10, 1978, Deane and Berryessa filed the instant petition for determination of entitlement to the distribution of the estate, pursuant to Probate Code section 1080; on March 23, 1978, Marjorie and J. Frank Murphy also claimed the estate as the parents and sole heirs at law of the decedent (Prob. Code, § 1080). Marilyn has filed no claim to the estate and did not appear or testify at the hearing; Berryessa also did not appear personally and did not testify in support of his petition or in opposition to the claim of decedent's parents. Deane, the trustee named in the will, did not personally appear and did not testify in support of his petition nor in opposition to the claims of decedent's parents. J. Frank Murphy personally appeared and testified in support of his claim and that of his wife.

The court concluded that Peter Murphy died testate on May 25, 1977, and that his only heirs were his parents, J. Frank Murphy and Marjorie Murphy. The marital settlement agreement was not a disclaimer pursuant to Probate Code sections 190-190.10, or at all. Marilyn is the party entitled to take pursuant to the provisions of the will as against Berryessa,

who would have been entitled to take only upon the occurrence of the precise condition that Marilyn predecease the testator or not survive the testator for 180 days. As this provision of the will is clear, Probate Code section 190.6 is not applicable, irrespective of any disclaimer.

The court further concluded that by her acts and conduct, including executing the compromise agreement of June 2, 1977, and the inheritance tax declaration of January 24, 1978, Marilyn accepted the interest passing to her by the will of the decedent. The agreement of June 2, 1977, was a voluntary agreement, compromise and assignment of Marilyn's interest under the will of decedent within the meaning of Probate Code section 190.7. Deane and Berryessa are not entitled to any part of the estate and are not his heirs pursuant to Probate Code section 1080.[2] J. Frank Murphy and his wife are the heirs of decedent and, pursuant to the terms of the property settlement agreement, the compromise agreement of June 2, 1977, and Probate Code section 1080, are entitled to distribution of the entire estate. The court then entered its decree distributing one-half of the estate to each of the parents of the decedent.

■ Deane and Berryessa's first contention on appeal is that the decree is not supported by the findings. Specifically, they urge that the determination in paragraph 3 of the decree, that by the terms of the will, "the whole of said estate is devised and bequeathed" to the decedent's parents, is contradicted by paragraph 2 of the findings, which states that the will left the entirety of the estate to Marilyn unless she did not survive him by 180 days, etc. This contention is without merit as it ignores the subsequent paragraphs of the conclusions that refer to the documents later executed, and the express findings set forth in paragraphs 5 and 6, that in light of the evidence before it, "[b]y her acts and her conduct, including executing the compromise agreement of June 2, 1977 and the inheritance tax declaration of January 24, 1978, Marilyn Murphy accepted the interest passing to her by the will of the decedent" and that "The agreement of June 2, 1977 was a voluntary agreement, compromise and assignment of Marilyn Murphy's interest under the will of the decedent within the meaning of Probate Code 190.7."[3]

---

[2]So far as pertinent, the statute provides that notice shall be given to all legatees, devisees and known heirs of the decedent.

[3]The statute provides: "*A disclaimer may not be made after the beneficiary has accepted the interest to be disclaimed.* An acceptance does not preclude a beneficiary from thereafter disclaiming all or part of any interest to which he became entitled because another person disclaimed an interest and of which interest the beneficiary or person able to disclaim on his behalf had no knowledge. For the purposes of this chapter, *if a*

Deane and Berryessa next contend that by her execution of the marital settlement agreement, Marilyn waived any right to take under the will. Citing *Bennett* v. *Forrest,* 24 Cal.2d 485 [150 P.2d 416], and *Estate of Crane,* 6 Cal.2d 218 [57 P.2d 476, 104 A.L.R. 1101], they argue that at a minimum, the marital settlement agreement contractually required Marilyn to disclaim, and that even if there had been no other documents indicating her intent to disclaim, the agreement itself was a sufficient disclaimer to estop her from taking. We cannot agree.

The uncontroverted evidence summarized above indicates that during the year and a half period after the execution of the marital settlement agreement and his death, the decedent chose not to exercise his right to change the terms of the will executed in 1972 prior to the dissolution.

Further, the execution of the marital settlement agreement was not tantamount to a revocation of the previously executed will, despite Marilyn's waiver in paragraph 9 thereof, quoted above at page 418. ■ A preexisting will is not revoked by such an agreement unless such a revocation is expressly stated (Prob. Code, § 73; *Estate of Bartolo,* 124 Cal.App.2d 727, 730 [269 P.2d 30]). We cannot find in the marital settlement agreement any language that either explicitly or impliedly revokes the preexisting will; each party merely waived the right to inherit the estate of the other or to take pursuant to the 1972 will. In the instant case, however, the waiver was not effective.[4]

■ Moreover, a testator's failure to execute a new will or to alter a preexisting one is an exercise of the right to testamentary disposition and

---

*disclaimer has not theretofore been filed, a beneficiary has accepted an interest if he, or someone acting on his behalf, (1) makes a voluntary assignment or transfer of, or contract to assign or transfer, the interest or part thereof, or (2) executes a written waiver of the right to disclaim the interest, or (3) sells or otherwise disposes of the interest or any part thereof pursuant to judicial process"* (italics added).

[4]We are aware of certain authorities in which courts have enforced the waiver of the right of one spouse to inherit the estate of the other in the future, or to take pursuant to a previously existing will under circumstances that are factually distinguishable from the instant case. While agreements to "forever" waive any interest in the other spouse's estate, insurance policy or similar benefits, may contain language somewhat similar to that of the marital settlement agreement here, there were different circumstances, such as the decedent's attempt to adhere to the marital settlement agreement by executing a new will (*Meherin* v. *Meherin,* 99 Cal.App.2d 596, 597 [222 P.2d 305]); or by exercising the power to change the beneficiary of an insurance policy (*Thorp* v. *Randazzo,* 41 Cal.2d 770, 772 [264 P.2d 38]); or by explicitly providing that the surviving spouse was not to inherit any part of the decedent's estate (*Estate of Wiedemann,* 239 Cal.App.2d 269, 274 [48 Cal.Rptr. 558]).

is the equivalent of having drawn up a new will. In *Estate of Crane, supra,* 6 Cal.2d, at page 221, the court held: "It is to be remembered that *although the will in which the legacy is contained had been executed prior to the date of the contract, the testator lived more than two years thereafter. And a will speaks from and as of the date of the testator's death.* If the testator had not executed this will until after the date of the property settlement agreement, it would not be reasonable to say that he was without right to make such subsequent will and thereby give additional property to his wife. *But in substance and effect he did the same thing by leaving his will unchanged after the date of said contract*" (italics added).

Accordingly here, the will of the testator "spoke" his intentions "as of the date of his death"; these intentions were that Marilyn inherit his entire estate unless she did not survive him by 180 days, in which case alone the will provided for the testamentary trust for the benefit of Berryessa.[5] Marilyn was not under a contractual obligation to disclaim any interest in the decedent's estate nor is she legally estopped from doing so. Furthermore, the absolute waiver of any interest in the estate of the decedent would have been effective only if the testator had, in fact, drawn up a separate will excluding Marilyn or diminishing the interest he had bequeathed to her by the will executed prior to the marital settlement agreement.

█ Deane and Berryessa next contend that Marilyn's execution of the unfiled agreement of June 2, 1977, was tantamount to a disclaimer which divested Marilyn of her interest under the will. However, Probate Code section 190.3 expressly provides that to be effective a disclaimer *"shall be filed within a reasonable time after the person able to disclaim acquires knowledge of the interest"* (italics added). They concede that the June 2, 1977, agreement was not filed, but urge that it must be given effect as a common law disclaimer and effects a renunciation of Marilyn's interest under the decedent's will. They then conclude that, therefore, no estate ever vested in Marilyn and nothing remained to be assigned to the decedent's parents. █ We note, however, that the Probate Code does not negate common law principles and that specific procedural requirements do not nullify the substantive right to disclaim established at common law (*Estate of Meyer,* 107 Cal.App.2d 799 [238 P.2d 597]). Probate Code section 190.10 provides, so far as pertinent, that the statutory requirements for filing a disclaimer *"shall not limit or abridge*

---

[5] The fact that the language of the marital settlement agreement meets the case law definition, an effective waiver and renunciation of an interest in a spouse's estate is not apposite, as discussed in footnote 4 above.

*the presently existing rights of any person to assign, convey, release or disclaim any property or interest. . ."* (italics added). ■ We can only conclude that the evidence and applicable law support the finding that Marilyn had the right to inherit the interest originally bequeathed to her by the decedent's will and that she did not effectively disclaim that interest by virtue of the unfiled June 2, 1977, agreement.

As we have determined that Marilyn made no effective disclaimer by executing the June 2 agreement, the question remains as to whether she properly and effectively assigned to the decedent's parents her interests under the decedent's will. The facts indicate compliance with Probate Code section 190.7, quoted above at footnote 3, page 420.

■ The agreement of June 2, 1977, which Marilyn signed after consulting with independent counsel, assigned her interest in the decedent's estate to his parents. The record indicates that the parties discussed at length the terms of this agreement prior to the instant probate proceedings. The court properly found and concluded that by the execution of the agreement of June 2, Marilyn attempted to insure that she would receive *something* from the decedent's estate by bargaining and effecting a compromise. Such an intention to compromise with respect to undetermined interests and rights as opposed to engaging in litigation, is strongly encouraged by the law, particularly in a probate situation (*Estate of Green,* 138 Cal.App.2d 211 [292 P.2d 651]; *Estate of Johanson,* 62 Cal.App.2d 41 [144 P.2d 72]; *Estate of Howe,* 88 Cal.App.2d 454 [199 P.2d 59]). We conclude, therefore, that the June 2, 1977, document was a properly executed assignment.

■ We note that the terms of the document indicate that Marilyn was bargaining as opposed to disclaiming. Pursuant to Probate Code section 190, subdivision (c), a "disclaimer" is a written instrument which *declines, refuses, renounces, or disclaims* any interest which would otherwise be succeeded to by a beneficiary. Logically, a disclaimer does not involve an agreement with other parties but rather *implies a unilateral action* which conveys no interest to other parties. Under the terms of the June 2 agreement, the decedent's parents accepted Marilyn's appointment as executrix of the estate as well as her retention of a share in the estate and the contingent conveyance of her share to Berryessa. We conclude that the trial court properly concluded that the June 2, 1977, agreement was an assignment and compromise and not a disclaimer.

As we have concluded that there was no effective disclaimer, Berryessa and Deane's contention that Marilyn's divested interest passed to them as

contingent beneficiaries need not be discussed in detail. As indicated above, the document dated June 2, 1977, was a memorialization of the oral contract between Marilyn and the decedent's parents and signified her acceptance of a one-fifth interest in the decedent's estate. Thus, the trial court properly concluded that the June 2 agreement was a voluntary agreement, compromise and assignment of her interest under the will of the decedent within the meaning of Probate Code section 190.7.

■ We turn next to Deane and Berryessa's contention that the various documents here in issue constitute a disclaimer rather than an assignment. They argue that Marilyn was not told that she had any interest under the decedent's will to accept or assign, and that she was informed that "she took nothing by reason of the property settlement agreement." This argument is predicated on the inheritance tax declaration quoted above at page 419 which stated that while Marilyn would have been entitled to receive the decedent's estate under the terms of his will, she "has by reason of the execution of said property settlement agreement surrendered all right to receive any property under the Will of said decedent." As indicated above, the state inheritance tax department accepted "this report" and charged all inheritance taxes to the decedent's parents as heirs at law. We do not agree with Deane and Berryessa's contention.

As the pertinent part of the inheritance tax declaration provided that "Marilyn Y. Murphy . . . has by reason of the execution of said property settlement agreement *surrendered all right to receive any property under the Will of said decedent,*" we can reasonably infer that when she relinquished her interest in the decedent's estate, she may have believed that she had no alternative but to proceed as she did. In any event, Marilyn's lack of knowledge is not inconsistent with an assignment since it is precisely such a lack of knowledge that promotes a compromise in a probate situation. As indicated above, the law strongly favors negotiation and compromise as opposed to litigation (*Estate of Howe, supra,* 88 Cal.App.2d 454).

Deane and Berryessa next contend that Probate Code section 190.6, set forth below,[6] adopted the rule that a disclaimed interest under a will

---

[6]"Unless otherwise provided in the will, inter vivos trust, exercise of the power of appointment, or other written instrument creating or finally determining an interest the interest disclaimed and any future interest which is to take effect in possession or enjoyment at or after the termination of the interest disclaimed, shall descend, go, be distributed or continue to be held as if the beneficiary disclaiming had predeceased the person creating the interest. In every case, the disclaimer shall relate back for all purposes to the date of the creation of the interest."

should go to a contingent beneficiary in the same manner as if the disclaimant had predeceased the testator, and rejected the contrary rule (i.e., that the contingent beneficiary cannot take because the precise condition under which he would take his bequest has not occurred). They rely on the Uniform Probate Code (UPC) and emphasize that the draftsmen of the disclaimer statute also relied on the UPC. They further argue that Probate Code section 190.6 is analogous to UPC section 2-801, subdivision (c). We agree that the import of both UPC section 2-801, subdivision (c), and Probate Code section 190.6 is that disclaimed interests pass as if the person renouncing had predeceased the decedent, and that the renunciation relates back "for all purposes" to the date of death of the decedent (UPC, § 2-801, subd. (c)), or "to the date of the creation of the interest" (Prob. Code, § 190.6).

However, neither UPC section 2-801, subdivision (c), nor Probate Code section 190.6 are apposite here since the additional provisions that would allow the execution of a marital settlement agreement to bar a spouse from taking either by will or intestacy (UPC, §§ 2-204, 2-508) were not adopted by the California Legislature. The reason for the omission is clear. Such a contractual agreement to forego any interest in a spouse's will is expressly prohibited by *Grimm* v. *Grimm,* 26 Cal.2d 173, 176-179 [157 P.2d 841]. *Grimm* held that general statements are insufficient to constitute a waiver of the right to take by will. Thus, Deane and Berryessa's arguments ignore these crucial distinctions between the California disclaimer statute and the UPC.[7]

While our Legislature relied upon the UPC as a guideline, it explicitly omitted UPC section 2-508.[8] Thus, the all too rarely clearly expressed legislative intent was to maintain the existing case law which, as indicated above, is directly contrary to UPC section 2-508 (*Thorp* v. *Randazzo, supra,* 41 Cal.2d, 775; *Grimm* v. *Grimm, supra,* 26 Cal.2d 176-179; *Sullivan* v. *Union Oil Co. of Cal.,* 16 Cal.2d 229, 233 [105 P.2d 922]; *Estate of Rinker,* 209 Cal.App.2d 601, 606 [26 Cal.Rptr. 1]; *Estate of Buchman,* 132 Cal.App.2d 81, 92 [281 P.2d 608, 53 A.L.R.2d 451]; *Meherin* v. *Meherin, supra,* 99 Cal.App.2d 596, 598).

---

[7]UPC section 2-204 allows a waiver of "all rights" in a property settlement agreement to bar taking either by will or intestacy, and pursuant thereto *also provides that a divorce itself revokes any disposition of property* made by the will to the former spouse, and further includes a provision that "Property prevented from passing to a former spouse because of revocation by divorce or annulment passes as if the former spouse failed to survive the decedent" (UPC, § 2-508; italics added).

[8]UPC section 2-508 provides: "If after executing a will the testator is divorced or his marriage annulled, the divorce or annulment revokes any disposition or appointment of

Furthermore, as we have indicated above, the law is settled in California that the mere execution of a property settlement agreement between a husband and wife whereby they adjust their property rights does not revoke a previous will executed by one of the spouses under terms of which the other is named as beneficiary.[9] Thus, in light of the fact that the issue before us is clearly determined by an established rule of law enunciated by the courts of this state, "we are not at liberty to overrule it in favor of one followed in decisions in other states . . . [and] the authorities relied upon by appellants which might support a different rule must be disregarded by this court" (*Estate of Perez*, 98 Cal.App.2d 121, 123 [219 P.2d 35]).

■ Both Probate Code section 190.6 and UPC section 2-801, subdivision (c) provide that their terms are applicable *"unless otherwise provided in the will . . ."* (italics added). Thus, even if here we were to assume that Marilyn's interest has been divested, such an interest would pass to the contingent beneficiaries *only* if something to the contrary was not otherwise provided for by the terms of the will. The instant will, however, clearly specifies that in order for the contingent beneficiary to take, Marilyn must not survive the testator by 180 days. This is a "precise" contingency as required by Probate Code section 143,[10] and the trust for

---

property made by the will to the former spouse, any provision conferring a general or special power of appointment on the former spouse, and any nomination of the former spouse as executor, trustee, conservator, or guardian, unless the will expressly provides otherwise. Property prevented from passing to a former spouse because of revocation by divorce or annulment passes as if the former spouse failed to survive the decedent, and other provisions conferring some power or office on the former spouse are interpreted as if the spouse failed to survive the decedent. If provisions are revoked solely by this section, they are revived by testator's remarriage to the former spouse. For purposes of this section, divorce or annulment means any divorce or annulment which would exclude the spouse as a surviving spouse within the meaning of Section 2-802(b). A decree of separation which does not terminate the status of husband and wife is not a divorce for purposes of this section. No change of circumstances other than as described in this section revokes a will."

[9]We note that Deane and Berryessa also rely on an annotation in 74 A.L.R.3d 1108, and *Russell* v. *Estate of Russell*, 216 Kan. 730 [534 P.2d 261, 74 A.L.R.3d 1102]. However, none of the authorities therein cited are California cases. Moreover, of nine jurisdictions represented, eight have a specific statute which revokes a will as to an ex-spouse upon divorce. California has no such statute. The remaining jurisdiction cited recognized the right as part of its common law.

[10]The statute provides: "A condition subsequent is where an estate or interest is so given as to vest immediately, subject only to be divested by some subsequent act or event. A testamentary disposition, when vested, can not be divested unless upon the occurrence of the precise contingency prescribed by the testator for that purpose."

Berryessa never came into being. As Deane and Berryessa had no more than a "mere expectancy," the court properly concluded they were not entitled to any interest in the decedent's estate.

Deane and Berryessa further argue that pursuant to Probate Code sections 101 and 102,[11] and the paramount rules governing the construction of wills, a court is required to construe a will in favor of testacy and to carry out the testator's intent as expressed in the will itself. As indicated above, the instant will is not ambiguous and leaves no room for an interpretation of the testator's intent. He intended to leave all of his estate to Marilyn unless she did not survive him by 180 days. ▆ Where language of a will in light of surrounding circumstances will not reasonably admit of more than one construction, the rule favoring testacy as against intestacy will not be applied (*Estate of Klewer,* 124 Cal.App.2d 219 [268 P.2d 544, 41 A.L.R.2d 941]). Even ". . . where a will is capable of two interpretations . . . the interpretation by which the property goes to those of the blood is preferred [citations]. . ." (*Estate of Lawrence,* 17 Cal.2d 1, 12 [108 P.2d 893]). This preference gives way only when ". . . in order to prefer those of the blood of the testator, it is necessary to ignore the presumption against intestacy. . ." (*Lawrence,* p. 12). Here, the court's decree in favor of the decedent's parents not only actually "preferred" those of the blood of the testator, but also Marilyn has succeeded in accord with his preference, as by her actions she assigned her rights to the estate of the decedent's parents. Here, the decedent's will is clear and only as the result of Marilyn's survival and subsequent actions were all of the terms of the will not carried out.

Finally, Deane and Berryessa contend that the statutory disclaimer filed February 23, 1978, was sufficient to pass Marilyn's interest in the decedent's estate to them; they also assert that pursuant to Probate Code section 190.6, she was legally obligated to disclaim. There is no merit to this contention, even assuming that the nine-month period was "within a reasonable time" pursuant to Probate Code section 190.3, subdivision (a)(1).

▆ First, the very terms of the purported disclaimer are inconsistent with the definition of a disclaimer, since it does not decline, refuse or disclaim as required by Probate Code section 190, subdivision (c).

---

[11]Probate Code section 102 provides: "The words of a will are to receive an interpretation which will give to every expression some effect, rather than one which will render any of the sections inoperative; *and of two modes of interpreting* a will, that is to be preferred which will prevent a total intestacy" (italics added).

Instead, the February 23, 1978, document reserves Marilyn's right to continue as executrix and to "any rights otherwise acquired in said estate." By attempting to reserve rights "otherwise acquired" in the decedent's estate, Marilyn acknowledged a belief on her part that she would actually receive something pursuant to the June 2, 1977, agreement. Also, in reserving all rights otherwise acquired, the document also fails to actually "(ii) describe the property or part thereof or interest therein disclaimed. . ." (Prob. Code, § 190.1). There is no authority for the argument that Marilyn was legally obligated to disclaim. Further, in attempting, by means of the February 23, 1978, disclaimer to divest herself of her interest in the decedent's estate, Marilyn was acting in a manner which expressly contradicts the terms of the June 2, 1977, agreement. ■ Once Marilyn had accepted her interests under the terms of the decedent's estate, it was not possible for her to disclaim in the manner required by Probate Code section 190.7.

In summary, we conclude that: 1) the decree is consistent with the trial court's findings, conclusions and the evidence; 2) the marital settlement agreement gave decedent the right to dispose of his property as was his desire and he legitimately exercised his right in favor of Marilyn by not changing the preexisting will after the dissolution; 3) the agreement of June 2, 1977, between Marilyn and the decedent's parents was effective to assign Marilyn's rights under the will and also was an acceptance of her interest in the will (Prob. Code, § 190.7); 4) her acceptance precluded the disclaimer of February 23, 1978, from being effective pursuant to Probate Code section 190.7; 5) the execution of the marital settlement agreement did not revoke the preexisting will, and thus the "mere expectancy" of the contingent beneficiary never vested. Further, even assuming without conceding, that there was an effective disclaimer on the part of Marilyn, intestacy might well be preferable to allowing Deane and Berryessa to take, as the contingency specifically set forth by the will did not occur.

The decree is affirmed.

Rouse, J., and Miller, J., concurred.

A petition for a rehearing was denied May 25, 1979, and appellants' petition for a hearing by the Supreme Court was denied July 5, 1979.