167 Cal.App.3d 97 (1985)
212 Cal. Rptr. 919
Estate of ELOISE W. GOSHEN, Deceased.
KENNETH CORY, as State Controller, Petitioner and Appellant,
v.
BILL EDWARD KONIG, as Executor, etc., Objector and Respondent.
Docket No. A028635.
Court of Appeals of California, First District, Division Three.
April 22, 1985.
*98 COUNSEL
Myron Siedorf and John D. Schell for Petitioner and Appellant.
John A. Cost and Parker S. Kelly for Objector and Respondent.
OPINION
BARRY-DEAL, J.
The state controller appeals from an order fixing inheritance tax, based on an earlier order sustaining respondent's objection to the report of the inheritance tax referee. The issue on appeal is whether an agreement to disclaim part of an estate as an integral part of a will contest settlement under which the disclaimant retains a benefit in the estate constitutes an acceptance within the meaning of Probate Code section 190.7 and operates to render Revenue and Taxation Code section 13409 inapplicable.[1]
*99 We reverse the order and remand for further proceedings.
The relevant facts are not in dispute. Eloise W. Goshen died on August 17, 1981. By her will, dated August 14, 1981, she left her entire estate to respondent Bill Konig, an unrelated party, and named him executor. On September 10, 1981, Barbara Shelver, decedent's daughter, filed a will contest and opposition to the petition of Bill Konig for issuance of letters testamentary, claiming an interest in her mother's estate as a pretermitted heir. Respondent and Shelver succeeded in settling the will contest and entered into a stipulation on November 17, 1982, which provided, among other things, that respondent would disclaim his interest in the estate's assets in exchange for a life estate in a $50,000 investment fund, paying no less than $6,000 a year; upon respondent's death, the remainder of the fund would go to Shelver's son. The parties further agreed that the remainder of the estate would go to Shelver, respondent would act as executor, and the will would be admitted to probate.[2]
*100 On November 24, 1982, the will contest was dismissed, the will was admitted to probate, and the letters testamentary were issued to respondent. On February 28, 1983, in accordance with the terms of the settlement agreement, respondent executed a disclaimer in which he disclaimed his interest in the decedent's estate in exchange for a life estate in income accruing from a $50,000 investment fund.[3]
The report of the inheritance tax referee, dated June 27, 1983, taxed the entire estate to respondent pursuant to the terms of the will.[4] Respondent filed an objection to the report, arguing that the referee erred in failing to recognize respondent's disclaimer. In sustaining respondent's objection, the trial court found that the disclaimer was filed within a reasonable time and that it was otherwise valid. The court then issued an order fixing tax after objection, and the state controller timely appealed.[5]

Discussion
(1) Appellant argues that respondent's disclaimer was not valid because respondent's opposition to the will contest and his agreement to disclaim his interest in the estate in exchange for a life estate in an invested fund constituted an acceptance under Probate Code section 190.7. As validity of the disclaimer is a question of law, it is fully reviewable by this court. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 209, p. 4200.)
*101 Under Revenue and Taxation Code section 13409, a valid disclaimer, duly made pursuant to Probate Code section 190 et seq., shifts the inheritance tax liability to the ultimate recipient. Where the disclaimer does not conform to the Probate Code requirements, and the distribution of interests in an estate is made pursuant to a will contest settlement as opposed to the filed disclaimer, the disclaimer will be disregarded in computing the inheritance tax due. (Estate of Walsh (1977) 72 Cal. App.3d 895 [140 Cal. Rptr. 462].) As stated in California Administrative Code, title 18, section 13409.1, "If a transferee under a will, ... enters into an agreement with other beneficiaries, heirs or transferees providing that the interest to which he [or she] would otherwise be entitled shall pass to a person or persons who would not otherwise succeed to such interest except under provisions of the agreement, the ... agreement by the transferee shall be disregarded in computing the inheritance tax due."
Under Probate Code section 190.7, a disclaimer is not valid when made after the beneficiary has accepted the interest to be disclaimed. Under that section, a beneficiary accepts an interest if he or she "... makes a voluntary assignment or transfer of, or contract to assign or transfer, the interest or part thereof,..." It is apparent in the instant case that respondent, by entering into the settlement agreement, contracted to transfer his interest in the estate before disclaiming it. Under section 190.7, therefore, respondent's disclaimer was invalid.
Although not directly on point, Estate of Murphy (1979) 92 Cal. App.3d 413 [154 Cal. Rptr. 859] is instructive. There, the decedent in his will left his estate to Marilyn, his wife, and named her executrix. Sometime after he executed the will, the marriage was dissolved, and the parties agreed to waive any interest in the other's estate. After the decedent's death, and prior to filing the petition for probate, Marilyn and decedent's parents entered into an agreement in which Marilyn agreed to disclaim any interest under the will in exchange for one-fifth of the estate and consent to her serving as executrix. Approximately eight months later, Marilyn filed in the probate proceedings a disclaimer of her interest, reserving the right to act as executrix and any other rights otherwise acquired in the estate. Soon thereafter, decedent's parents filed a claim to the estate, as did the contingent beneficiaries who argued that because Marilyn disclaimed any interest in the estate, they were entitled to it.[6]
*102 The trial court found, inter alia, that by executing the settlement agreement with decedent's parents and filing an inheritance tax declaration, Marilyn had accepted the interest which passed to her by the will and that the disclaimer, therefore, was invalid. It held that Marilyn effectively assigned her interest to the decedent's parents and that the contingent beneficiaries were not entitled to any share of the estate.
The appellate court affirmed the trial court's order. It agreed with the trial court that Marilyn's agreement with decedent's parents was a voluntary agreement, compromise, and assignment of her interest under the will. (Id., 92 Cal. App.3d at p. 424.) "We note that the terms of the document indicate that Marilyn was bargaining as opposed to disclaiming. Pursuant to Probate Code section 190, subdivision (c), a `disclaimer' is a written instrument which declines, refuses, renounces, or disclaims any interest which would otherwise be succeeded to by a beneficiary. Logically, a disclaimer does not involve an agreement with other parties but rather implies a unilateral action which conveys no interest to other parties. Under the terms of the June 2 agreement, the decedent's parents accepted Marilyn's appointment as executrix of the estate as well as her retention of a share in the estate and the contingent conveyance of her share to Berryessa. We conclude that the trial court properly concluded that the June 2, 1977, agreement was an assignment and compromise and not a disclaimer." (Estate of Murphy, supra, 92 Cal. App.3d at p. 423, original italics.)
In the case at bench, it is clear that respondent was bargaining rather than disclaiming. For more than a year respondent opposed Shelver's will contest. He then entered into a contract with Shelver whereby he agreed to disclaim his interest "in exchange for" a lifetime benefit in an investment fund. This agreement was an assignment and compromise rather than a disclaimer. Because respondent accepted his interest before disclaiming it, the purported disclaimer executed on February 28, 1983, was invalid and should not have been recognized in computing the inheritance tax.
The order is reversed and the cause remanded to the superior court with directions to conduct proceedings consistent with the views expressed herein.
White, P.J., and Scott, J., concurred.
NOTES
[1] In 1972 Probate Code section 190 et seq. was enacted to modernize procedures for disclaiming interests in decedents' estates. At the same time Revenue and Taxation Code section 13409 was revised to permit avoidance of inheritance taxes by disclaimer in conformity with federal law. (Stats. 1972, ch. 990, §§ 1-6, pp. 1805-1809; see 5 Witkin, Summary of Cal. Law (8th ed. 1974) Taxation, § 218, pp. 4185-4186.)

Probate Code section 190 et seq. was repealed in 1983 and a new disclaimer statute was enacted, Probate Code section 260 et seq. (Stats. 1983, ch. 17, §§ 1-5; see Witkin, Summary of Cal. Law (8th ed., 1984 supp. to vol. 7) Wills and Probate, § 38A, pp. 214-215.) The California Inheritance Tax Law, former Revenue and Taxation Code section 13301 et seq., was repealed in 1982. (Stats. 1982, ch. 1535, § 14, p. 5974; see Witkin, Summary of Cal. Law (8th ed., 1984 supp. to vol. 5) Taxation, § 213A, p. 687.)
Although the sections involved here were repealed, decedent's estate was subject to these statutes because decedent died in 1981, prior to their repeal.
[2] The pertinent sections of the settlement agreement are as follows: "This confirms our conversation today during which it was agreed in principal [sic] subject to signature by our two clients that the pending Will Contest Before Probate would be dismissed by you on the following terms and conditions:

".... .... .... .... .... ....
"3. Bill Konig will execute a disclaimer as to all interest in the assets of the estate in exchange for a life time benefit of the income from $50,000, which shall not be less than $6,000 per year. Such income shall be by direct payment to him from the principal of the investment rather than from your clients. As we discussed, the investment would be in class A, bonds yielding not less than $6,000 per year. BARBARA SHELVER shall provide Bill Konig of assurance that upon his death the $50,000 fund shall be for the benefit of her son  the grandson of Mrs. Goshen. Bill shall act as Executor of the will as provided therein, and any inheritance or other tax which may be applied to his $6,000 per year benefit shall be paid from the remainer [sic] of the estate. After payment of expenses of administration and taxes and provision of the $50,000 fund for the benefit of Konig, all the remaining estate shall be distributed to BARBARA SHELVER...."
The addendum to the settlement agreement, dated November 24, 1982, provided the following: "1. All assets of the Estate of Eloise Goshen which are to be distributed to BILL EDWARD KONIG by the terms of the Settlement Agreement dated November 17, 1982, including any assets he receives or has already received from properties held in joint tenancies with the decedent, shall be distributed to him and/or confirmed to him without any liability for inheritance taxes or other taxes directly attributable to the closing and distribution of the estate. The estate shall assume and pay any such taxes, provided, however, that the estate shall not be liable for any income taxes applicable thereto.
".... .... .... .... .... .... .
"3. The income mentioned in paragraph 1, above, and the afore-mentioned settlement agreement, which derives from the $50,000 investment fund, shall continue for the lifetime of BILL EDWARD KONIG, and shall be in the form of a life estate, but the fund shall be held in the name of BARBARA SHELVER as trustee for her son, GREGORY DALE SHELVER.
"4. Moreover, by the disclaimer executed by BILL EDWARD KONIG, all of the state [sic] shall pass directly to BARBARA SHELVER and/or her son, as set forth in the Settlement Agreement.
".... .... .... .... .... .... .
"7. KONIG'S right to receive income from the $50,000 fund shall commence on December 1, 1982, regardless of when payment is made, which shall depend upon the payment schedule of the actual investment...."
[3] The disclaimer, in pertinent part, states as follows: "My name is BILL EDWARD KONIG, and I am the executor and personal administrator of the will of ELOISE W. GOSHEN.

"I confirm that I have executed a disclaimer of any interest I may have in the Estate of ELOISE W. GOSHEN, in exchange for life-time income from all of the income accruing from a $50,000.00 face value, FLORIDA POWER AND LIGHT BOND maturing in the year of 2012. Should I be living at that time, the proceeds from such maturing bond shall be reinvested to produce for the remainder of my life not less than $500 per month income, and upon my death such income shall revert [to] BARBARA SHELVER in trust for her son, GREGORY along with the corpus of the bond which shall show her name as trustee with a life estate in the income to me...."
[4] The clear market value of the estate was $161,047. Because of respondent's status as "stranger," the tax due was determined to be $24,688.
[5] Based on the modified computations in accordance with the court's order, the total amount of inheritance tax due from the estate was determined to be $12,421: $4,347 taxed to Shelver and $8,074 to respondent.
[6] Marilyn filed an inheritance tax declaration, attaching a copy of the will and the marital settlement agreement. She declared that under the settlement she surrendered all rights to receive any property under the will. The state inheritance tax department accepted the declaration and charged all inheritance taxes to decedent's parents, as heirs at law. The proper determination of the inheritance tax was not at issue in the case. (Estate of Murphy, supra, 92 Cal. App.3d at pp. 418-419.)