In re Theodore A. KOLB, Debtor.

Robert M. Cassel, on behalf of this Chapter 11 Estate, Plaintiff–
Appellant,

v.

Hilde Kolb, Trustee; Jonathan Kolb; Richard Kolb; Douglas Kolb, Defendants–Appellees.

No. 01–17240.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 4, 2002.

Filed March 3, 2003.

Amended April 17, 2003.

---

R. App. P. 34(a)(2).

John Poppin, Law Offices of John Poppin, San Francisco, CA, for the plaintiff-appellant.

Neil R. Bardack, McQuaid, Metzler, Bedford and Van Zandt, San Francisco, CA, for the defendants-appellees.

Before COWEN,* HAWKINS and W. FLETCHER, Circuit Judges.

## ORDER AND AMENDED OPINION

### ORDER

The Opinion filed on March 3, 2003, and appearing at 321 F.3d 868 (9th Cir.2003), is amended as follows:

Slip Opinion page 2940, line 9: substitute "transfer" for "conveyance" so the sentence reads "Alternatively, Cassel argued that the disclaimer was a fraudulent transfer under the Bankruptcy Code."

Slip Opinion page 2941, lines 18–21: delete "The Bankruptcy Court's factual findings are reviewed for clear error. *In re Estate of Markair, Inc.,* 308 F.3d 1038, 1040 (9th Cir.2002)."

Slip Opinion page 2943, line 26: insert footnote call "3" following "For the reasons below, we conclude that it was." At footnote "3" insert: "Because we con-

* The Honorable Robert E. Cowen, Senior United States Circuit Judge for the U.S. Court of Appeals for the Third Circuit, sitting by designation.

clude that Theodore Kolb accepted the benefits of his contingent interest and thus could not disclaim it, we need not reach Cassel's alternative argument that the disclaimer constituted a fraudulent transfer."

Slip Opinion page 2948, line 33: insert "Each action is sufficiently clear, and does not raise any genuine issues of material fact." following the sentence that reads "In the present matter, Cassel identifies two actions taken by Theodore Kolb with respect to the assets of the Kolb Trust."

Slip Opinion page 2951, line 30: insert footnote call "12" following "The Bankruptcy Court shall proceed in a manner consistent with this opinion." At footnote "12" insert: "We also deny without prejudice to renewal after remand to the Bankruptcy Court the appellant's motion for substitution contained in the suggestion of death filed under Federal Rule of Appellate Procedure 43(a)."

Substitute "Uniform Disclaimer of Transfers Act" for "Uniform Transfers Act" at the following: slip Opinion page 2946, lines 14, 16, 18; slip Opinion page 2946, footnote 6, lines 1 and 6; slip Opinion page 2947, footnote 7, line 5; and slip Opinion page 2948, lines 21–22.

With the filing of these amendments,

Appellant's Motion re Suggestion of Death and Response Thereto is DENIED AS MOOT, as the Motion has been addressed in the amendments to the Opinion.

Appellees' Motion for Permission to File Appendix to Petition for Panel Rehearing and for Rehearing En Banc is GRANTED.

The panel has voted to deny Appellees' petition for panel rehearing. Judge Cowen has recommended denying the petition for rehearing en banc and Judges Hawkins and Fletcher have voted to deny the en banc petition.

The full court has been advised of the petition for rehearing en banc and no active Judge has requested a vote on whether to rehear the matter en banc. Fed. R.App. P. 35.

The Petition for Panel Rehearing and for Rehearing En Banc is DENIED.

## OPINION

COWEN, Circuit Judge.

Robert M. Cassel ("Cassel") appeals the order of the District Court, which affirmed the order of the Bankruptcy Court granting summary judgment in favor of the appellees Hilde Kolb, Jonathan Kolb, Richard Kolb, and Douglas Kolb on Cassel's adversary proceeding. Cassel argues that both courts erred in holding that a beneficiary's use of a contingent interest in the remainder of a trust to help the beneficiary secure personal and professional bank financing could not demonstrate an acceptance of that interest under California law. We conclude that debtor Theodore Kolb's contingent interest is an asset of the bankruptcy estate, and remand for further proceedings.

## I.  BACKGROUND

Theodore Kolb's father Dr. Leon Kolb died testate on May 11, 1977. Dr. Kolb's will granted his entire estate to his wife Hilde Kolb. One-half of the estate was given to Hilde outright, and the remaining one-half was placed in a trust (the "Kolb Trust") for her benefit. Dr. Kolb provided that Hilde be given all income generated by the Kolb Trust—which consisted of stocks, bonds, and two parcels of real estate—and granted her complete discretion to draw on the principal for living expenses. The income generated from the Kolb Trust was paid directly into two bank accounts maintained by Hilde Kolb. Hilde

granted each of her three children power of attorney, and signature authority over her bank accounts. At Hilde's direction, Theodore Kolb wrote checks from these accounts for her debts and occasionally, with Hilde's permission, for his own.

Dr. Kolb's will further provided that upon Hilde's death the remainder of the Kolb Trust would be divided equally among his three children, including Theodore Kolb. His will also stated that in the event that Theodore predeceased Hilde, Theodore's share would be distributed equally to Theodore's children, appellees Jonathan Kolb, Douglas Kolb, and Richard Kolb.

In 1988, Theodore Kolb included his contingent interest in the Kolb Trust on financial statements he submitted with a loan application for his law firm, but simply listed it as an interest in a trust without indicating its contingent nature. Because the firm was a partnership, Theodore would be personally liable on the loan, and his creditworthiness was therefore a relevant factor for the bank in deciding whether to fund the loan. Theodore filed subsequent financial statements in 1989, 1991, 1992, 1993, and 1994 for renewals of the loan, each listing the contingent interest as part of his net worth. Again, he failed to indicate that the interest was contingent. Additionally, he reported the contingent interest on two personal loan applications in 1989 and 1991. Each of these statements declared an asset in real estate, valued at $1,900,000 in 1988 and 1989, and $1,400,000 for the years 1990 through 1994. Each statement listed the street addresses for the two parcels owned by the trust, noting the title to each in the name of Kolb Trust, and declaring the "percent owned" as one-third. Each statement also reported the "estimated present value" of this real property at a combined total of $900,000, amounting to almost one-third of Theodore's reported net worth.

On May 16, 1997, Theodore Kolb filed a disclaimer of his interest in the remainder of Dr. Leon Kolb's estate in San Francisco Superior Court. Three days later, on May 19, 1997, Theodore filed a voluntary petition for bankruptcy under Chapter 11. Subsequently, on September 18, 2000, Hilde Kolb died.

On October 19, 1998, the Bankruptcy Court granted Cassel, a judgment creditor, permission to commence an adversary proceeding on behalf of Theodore Kolb's estate. The adversary proceeding sought to set aside Theodore's disclaimer of his interest in the Kolb Trust. Cassel argued that the disclaimer was ineffective under the California Probate Code because Theodore had accepted his contingent interest by accessing the trust funds in Hilde Kolb's bank accounts, and by declaring on his loan applications that he owned an interest in the Kolb Trust, without indicating that the interest was contingent. Alternatively, Cassel argued that the disclaimer was a fraudulent transfer under the Bankruptcy Code.

On cross-motions, the Bankruptcy Court entered summary judgment on behalf of the appellees. The Bankruptcy Court first determined that Cassel had failed to demonstrate that Theodore Kolb accepted his contingent interest in the Kolb Trust prior to filing the disclaimer. The Bankruptcy Court ruled that the trust funds received by Theodore through his withdrawals from Hilde Kolb's bank account represented too attenuated a connection to the trust funds to constitute acceptance of his contingent interest. The Bankruptcy Court also concluded that Theodore's inclusion of his interest in the Kolb Trust on his loan applications was insufficient to

create a disputed fact regarding acceptance.[2]

The District Court affirmed the Bankruptcy Court. *Cassel v. Kolb,* 267 B.R. 861 (N.D.Cal.2001). It first concluded that Cassel failed to demonstrate that Theodore Kolb had withdrawn funds from Hilde Kolb's bank account for purposes other than the management of her affairs. Second, like the Bankruptcy Court, the District Court also believed it "likely that Kolb was under an obligation to list the interest on his loan application." *Cassel,* 267 B.R. at 865. Therefore, the District Court determined that Theodore Kolb's inclusion of his contingent interest on the loan applications constituted, at most, a *de minimis* use. Accordingly, the District Court concluded that Theodore Kolb had not accepted the contingent interest, making his disclaimer valid under the California Probate Code. *Id.* at 866.

## II. DISCUSSION

■ The parties do not dispute that absent an effective disclaimer, Theodore Kolb's contingent interest would be deemed property of the bankruptcy estate. *Neuton v. Danning (In re Neuton),* 922 F.2d 1379, 1382–83 (9th Cir.1990). The District Court exercised appellate jurisdiction pursuant to 28 U.S.C. § 158(a)(1). We have jurisdiction over this appeal pursuant to 28 U.S.C. § 158(d), and review *de novo* the District Court's order on appeal from the Bankruptcy Court. *Eskanos & Adler v. Leetien,* 309 F.3d 1210, 1213 (9th Cir.2002).

### A. Acceptance of a Contingent Interest

■ Before reaching the merits of Cassel's argument, we must initially determine whether a contingent interest may be accepted at all under California law. As noted by the District Court, the only authority on this question is a single decision of the California Court of Appeal that suggests, in dicta, that a contingent interest may not be accepted until it vests by occurrence of the contingency. *See Meilink v. Gianelli,* 100 Cal.App. 615, 280 P. 561, 562 (1929). In *Meilink,* the beneficiaries executed a written disclaimer of their interest in stocks devised by their father, and purported to grant their interest to the creditors of their father's corporation. The Court of Appeal concluded that the decree had no effect because the father's estate had not been settled, and that "there can be no effective acceptance until it has been determined that they are at least entitled to have the stock distributed to them." *Id.* The District Court decided that it was not necessary to resolve this issue, finding that Theodore Kolb's actions did not constitute acceptance.

Although the California Probate Code does not directly answer the question, the interplay of its various provisions indicate that a contingent interest may be accepted, at least for the purpose of preventing disclaimer. California courts have long held that an " 'interest,' in its ordinary, accepted meaning, embraces both a vested and a contingent interest...." *In re Brown's Estate,* 24 Cal.App.2d 573, 75 P.2d

---

**2.** As noted by the District Court, the basis for the Bankruptcy Court's ruling on this issue is not clear. The Bankruptcy Court initially suggested that if Cassel could prove that a third party relied on Theodore Kolb's declaration of the Kolb Trust, then acceptance of the contingent interest might follow. Ultimately, however, the Bankruptcy Court concluded

that "no case ... has extended the idea of acceptance to simply stating a fact." The District Court resolved the ambiguity by construing the Bankruptcy Court's decision on this issue as a conclusion of law, requiring *de novo* review. We agree, and also review the matter *de novo*.

658, 659 (1938). Similarly, the Probate Code defines an interest broadly to include

> the whole of any property, real or personal, legal or equitable, or any fractional part, share, or particular portion or specific assets thereof, or any estate in any such property, or any power to appoint, consume, apply, or expend property, or any other right, power, privilege, or immunity relating to property.

Cal. Prob.Code § 267(a) (West 2002). More specifically, interests include, but are not limited to, rights created under a will, trust, "or by operation of law." *Id.* § 267(b)(2), (3), (14).

As discussed below, a beneficiary may disclaim any of these interests, provided that the interest has not been accepted. *Id.* §§ 275, 285(b)(3). Significantly, the Probate Code provides that an effectively disclaimed future interest "relates back" for all purposes to the "event determining ... the taker of the interest...." *Id.* § 282(a). The comments to § 282(a)—discussing a hypothetical beneficiary of the remainder of a life estate—make clear that the Probate Code permits a beneficiary to disclaim a future interest, even while the interest remains contingent. *Id.* cmt.

*Meilink*'s suggestion that acceptance is impossible until an interest vests is inconsistent with the California Probate Code. If *Meilink* prevents a beneficiary from accepting a future interest, then the affirmative acts of acceptance listed in § 285(b)(1) would be meaningless as to future estates. In addition, *Meilink*'s conclusion that the beneficiaries could not effectively disclaim their interests prior to acceptance now conflicts with the relation back provision in § 282(a) explaining the effect of disclaimed future interests.

We believe that *Meilink* is best interpreted as a pre-Code discussion of acceptance and disclaimer, now superseded by the enactments of the California legislature. Nothing in the Probate Code prohibits a beneficiary from accepting a contingent benefit, and the Code's broad definition of interest, as at common law, encompasses both vested and contingent interests. Accordingly, we conclude that Theodore Kolb was capable of accepting his interest in the Kolb Trust prior to its vesting upon Hilde Kolb's death.

## B. Disclaimers Under the California Probate Code

Having determined that a contingent interest may be accepted, we turn to the direct question on this appeal: whether Theodore Kolb's disclaimer was ineffective because he accepted the benefits of his contingent interest in the Kolb Trust. For the reasons below, we conclude that it was.[3]

■ We begin with the sections of the California Probate Code governing disclaimers. California permits the recipients of interests created by a will to disclaim their benefits, in whole or in part. Cal. Prob.Code § 275. Such a disclaimer may not, however, "be made after the beneficiary has accepted the interest sought to be disclaimed." *Id.* § 285(a). The California Probate Code specifies several actions, including "voluntary assignment, conveyance, encumbrance, pledge, or transfer" that constitute acceptance of an interest. *Id.* § 285(b)(1). Alternatively, the Probate Code includes a residual "catch-all" classification, prohibiting a disclaimer where the beneficiary "accepts the interest or part thereof or benefit thereunder." *Id.* § 285(b)(3). Cassel concedes that the spe-

---

**3.** Because we conclude that Theodore Kolb accepted the benefits of his contingent interest and thus could not disclaim it, we need not reach Cassel's alternative argument that the disclaimer constituted a fraudulent transfer.

cific provisions of § 285(b)(1) are not satisfied, and relies solely on § 285(b)(3).

■ The Probate Code does not define the term "acceptance." Moreover, with the exception of the Bankruptcy and District Courts below, no state or federal court has construed these provisions.[4] Accordingly, we "therefore apply California's rules of statutory construction." *In re First T.D. & Inv., Inc.*, 253 F.3d 520, 527 (9th Cir.2001). Our interpretation is guided by the directive in California Code of Civil Procedure § 1859 that "[i]n the construction of a statute the intention of the Legislature ... is to be pursued, if possible."

■ In *First,* we summarized the elements of statutory construction developed by the California courts, noting that the California Supreme Court "has declared that the 'ultimate task' in statutory interpretation 'is to ascertain the legislature's intent.'" *In re First,* 253 F.3d at 527 (quoting *People v. Massie,* 19 Cal.4th 550, 79 Cal.Rptr.2d 816, 967 P.2d 29, 41 (1998)). In most instances, the words of the statute, in their usual and ordinary import, provide the most reliable indication of legislative intent. *Id.* (quoting *Dyna–Med, Inc. v. Fair Employment & Hous. Comm'n,* 43 Cal.3d 1379, 241 Cal.Rptr. 67, 743 P.2d 1323, 1326 (1987); *Pac. Gas & Elec. Co. v. County of Stanislaus,* 16 Cal.4th 1143, 69 Cal.Rptr.2d 329, 947 P.2d 291, 297 (1997)). "When the wording of the statute is ambiguous, however, a court may consider extrinsic evidence of the legislature's intent," such as the history and apparent purpose of the provision in the context of the statute in its entirety. *Id.*

Our focus in applying § 285(b)(3) is the interpretation of the term "acceptance."[5] In normal usage, "acceptance" is defined as the "act of a person to whom a thing is offered or tendered by another, whereby he receives the thing with the intention of retaining it," with intent evidenced "by a sufficient act." *Black's Law Dictionary* 12 (6th ed.1990). In other words, acceptance denotes both receipt, and the intent to retain. *Id.*

■ Acceptance is also commonly understood to include both express and implicit actions. *Id.* at 13. Section 285(b) appears to recognize this distinction by defining express acceptance—voluntary assignment, conveyance, encumbrance, pledge, or transfer—in subdivision (b)(1), and leaving implied acceptance dependent on the specific actions of the beneficiary in subdivision (b)(3). The addition of the broad "catch-all" language in subdivision (b)(3) was one of the changes to the Pro-

---

**4.** As noted by the District Court, two California decisions involving disclaimers entered as part of a settlement of a contested estate explain that a disclaimer must consist of a unilateral action by the beneficiary, which conveys no interest to a third party in the process. *In re Estate of Goshen,* 167 Cal. App.3d 97, 212 Cal.Rptr. 919, 921–22 (1985); *In re Estate of Murphy,* 92 Cal.App.3d 413, 154 Cal.Rptr. 859, 866 (1979). These decisions, however, are inapplicable to the present matter as Cassel argues that Theodore Kolb's disclaimer was ineffective, rather than insufficient. *Cf. In re Estate of Murphy,* 154 Cal.Rptr. at 866 (distinguishing disclaimers from an "assignment and compromise"). Moreover, neither case offers an interpretation of "acceptance" as used in § 285(b)(3).

**5.** The District Court noted that "[t]he parties have not identified cases construing the 'benefit thereunder' language in section 285(b)(3)," suggesting it intended to focus on whether the funds in Hilde Kolb's bank account, or the loan applications submitted by Theodore Kolb constituted a benefit under the Kolb Trust. *Cassel,* 267 B.R. at 864–65. The District Court ultimately held that neither action constituted "acceptance." *Id.* at 866. We agree with the parties that the relevant question is whether Theodore Kolb's accepted his interest in the Kolb Trust through his actions.

bate Code enacted by the California legislature in 1983. Prior to the revision, the Probate Code defined acceptance only through specific actions by the beneficiary. Cal. Prob.Code § 190.7 (repealed 1985), *quoted in In re Estate of Sagal*, 89 Cal. App.3d 1003, 153 Cal.Rptr. 128, 131 n. 6 (1979).[6] The court in *Sagal* interpreted these examples as merely "illustrative but not exclusive" means of acceptance, recognizing instead that acceptance may arise from any action that "would portend immediately tangible results which would serve the interests of" the beneficiary. *Estate of Sagal*, 89 Cal.App.3d at 1014, 153 Cal.Rptr. 128. By defining acceptance to include the receipt of any benefit arising under the interest, § 285(b)(3) appears to reflect a legislative intent to adopt the *Sagal* court's approval of implied acceptance.

The fact-specific purpose of § 285(b)(3) is further evidenced by the notes accompanying its enactment. The comments to § 285 note that subdivision (b) is drawn in part from section 4(a) of the Uniform Disclaimer of Transfers by Will, Intestacy or Appointment Act of 1978 (the "Uniform Disclaimer of Transfers Act").[7] Cal. Prob. Code § 285 cmt.; *see also* 20 Cal. L. Rev. Comm. Reports 1190 (1990). The Uniform Disclaimer of Transfers Act, like the California Probate Code, does not clearly define acceptance. Instead, the comment to Uniform Disclaimer of Transfers Act § 4(a), 8A U.L.A. 175, cites to *In re Wilson's Estate*, 298 N.Y. 398, 83 N.E.2d 852 (1949), for "what conduct amounts to an acceptance." We reviewed *In re Wilson's Estate* in *Mapes v. United States*, 15 F.3d 138, 141 (9th Cir.1994), and explained that the case held a legatee's attempted renunciation of a one-third interest was ineffective "because his conduct up to the day he filed the renunciation had been consistent with an attempt to accept his legacy." The legatee's conduct in *In re Wilson's Estate* included a ten-month delay in filing the renunciation, and statements in a court proceeding suggesting an intent to retain the legacy following a final accounting. *Id.*

We then applied this example of acceptance to an interest disclaimed under the Arizona Probate Code, which contains language analogous to the current California statute.[8] In *Mapes*, the beneficiary and his wife owed the federal government sizeable back taxes and penalties. *Id.* at 139. After inheriting his mother's estate, the beneficiary disclaimed his interest in favor of his children. *Id.* The United States sought to void the disclaimer, arguing that the beneficiary had previously accepted his interest in the entire estate by retaining his mother's automobile, "which constitut-

---

**6.** Section 190.7 of the 1972 Probate Code stated that a "beneficiary has accepted an interest if he ... (1) makes a voluntary assignment or transfer of, or contract to assign or transfer, the interest or part thereof, or (2) executes a written waiver of the right to disclaim the interest, or (3) sells or otherwise disposes of the interest or any part thereof pursuant to judicial process."

**7.** Section 4(a) of the Uniform Disclaimer of Transfers Act states, in relevant part, that "[t]he right to disclaim property or an interest therein is barred by (1) an assignment, conveyance, encumbrance, pledge, or transfer of the property or interest, or a contract there-

for, (2) a written waiver of the right to disclaim, (3) an acceptance of the property or interest or benefit thereunder...." Uniform Disclaimer of Transfers Act § 4(a), 8A U.L.A. 174.

**8.** The Arizona Probate Code states that the "right to disclaim property or an interest in property is barred by ... [a]n acceptance of the property or interest or a benefit under it." Ariz.Rev.Stat. § 14–2801(j)(3) (Supp.2002). In *Mapes* we noted that the Arizona Code, like the California Code, is based on the Uniform Disclaimer of Transfers Act. 15 F.3d at 141.

ed a mere 1% of the value of the estate," *id.* at 141, and allowing the estate to insure the car for nearly a year. On these facts, we held that the disclaimer was effective, stating that the temporary possession of the car was not "inconsistent" with renunciation, nor in excess "of the estate representative's toleration...." *Id.* Further, we noted that the beneficiary did not "take title to the automobile, use it as collateral for a loan, or engage in any other conduct that would imply an intent to keep the car." *Id.; see also Jones v. Atchison (In re Atchison),* 925 F.2d 209, 211–12 (7th Cir.1991) (noting that Illinois law would prohibit disclaimer where the interest was used to acquire credit). We thus reasoned that such *"de minimis* use of estate property" did not constitute acceptance. *Mapes,* 15 F.3d at 141.[9]

Our analysis in *Mapes* is mirrored in several state court decisions interpreting probate statutes similar to California's, and holding that acceptance is demonstrated where the beneficiary exercises dominion or control over the purportedly disclaimed property. *See In re Estate of Lyng,* 608 N.W.2d 316, 320 (S.D.2000) (beneficiary accepted payments from life insurance and annuity contracts, and directed disposition of disclaimed property); *Badouh v. Hale,* 22 S.W.3d 392, 396–97 (Tex.2000) (beneficiary secured promissory note with expected interest under a will); *Leipham v. Adams,* 77 Wash.App. 827, 894 P.2d 576, 581–82 (1995) (beneficiary registered property with broker under own social security number, and used to trade securities); *Niklason v. Ramsey,* 233 Va. 161, 353 S.E.2d 783, 784 (1987) (beneficiary entered into contract to divide his interest in mother's estate, partially in favor of his grandchild). Each of these decisions

strikes the same balance as the California Court of Appeals in *Sagal,* holding that acceptance is demonstrated where the beneficiary's actions produce some immediately tangible benefit that is more than *de minimis.*

■ For these reasons, we think the language of § 285(b)(3), the definitions incorporated by the Uniform Disclaimer of Transfers Act, and the decisions construing analogous state probate codes, all demonstrate that the California legislature intended to prohibit the disclaimer of an interest accepted through conduct by a beneficiary implying an intent to direct or control the property in a manner that conveys more than a *de minimis* benefit to the beneficiary or a third party. *See Mapes,* 15 F.3d at 141. Application of this standard is a fact-sensitive inquiry that centers on the conduct of the beneficiary, and the result of such conduct.

■ In the present matter, Cassel identifies two actions taken by Theodore Kolb with respect to the assets of the Kolb Trust. Each action is sufficiently clear, and does not raise any genuine issues of material fact. Cassel first argues that Theodore accepted his interest by utilizing the income generated by the Kolb Trust to satisfy his own debts. Cassel reasons that because Hilde Kolb's personal accounts received sums from the Kolb Trust, Theodore Kolb's withdrawals from those accounts constituted use of the trust. Like the District and Bankruptcy Courts, we view this argument as too attenuated to satisfy the definition of acceptance intended by the California legislature. Theodore Kolb's withdrawals from Hilde Kolb's personal accounts were executed under his power of attorney on behalf of Hilde, and

---

**9.** Although the Supreme Court partially disapproved of the holding in *Mapes* in *Drye v. United States,* 528 U.S. 49, 120 S.Ct. 474, 145 L.Ed.2d 466 (1999), it did not address our analysis of acceptance.

with her permission. In contrast to the beneficiaries in *In re Estate of Lyng* and *Leipham,* Theodore did not exercise direct control over the Kolb Trust for his own benefit. Rather, he directly used Hilde's assets with her permission. At most, Theodore exerted control over Hilde's lifetime interest in the proceeds of the Kolb Trust. Accordingly, the District Court did not err in concluding that these withdrawals did not constitute acceptance.

■ Cassel also argues that Theodore Kolb was able to secure needed bank loans for his law firm by listing his contingent interest in the trust on his financial disclosures, and failing to indicate its contingent nature. In response, the appellees contend that Theodore's disclosure of his interest was necessary to provide accurate and complete financial reports to the banks. Merely listing the fact of his interest, the appellees conclude, does not demonstrate control or direction of the interest, and thus does not demonstrate intent.

Both the District and Bankruptcy Courts found this argument persuasive. The District Court held that as a matter of law, these actions could not constitute acceptance because Theodore Kolb "merely state[ed] the truth of the matter—that he held a contingent interest. . . ." *Cassel,* 267 B.R. at 865. However, the District Court's own discussion correctly notes that Theodore "did not identify his interest as contingent;" rather, he declared a one-third ownership in that interest, with an estimated value of $900,000.

The District Court, like the Bankruptcy Court, appeared to place great emphasis on the belief that "assuming the contingent

interest had some value, it is likely that[Theodore] Kolb was under an obligation to list the interest on his loan application." *Cassel,* 267 B.R. at 866. However, neither court, nor the parties, identified the source of this purported obligation. More importantly, there is no factual basis for this concern in the present record, as the appellees have never argued that Theodore listed the Kolb Trust to fulfill such a duty, actual or supposed. Thus, even assuming that such a duty exists, it is clear that Theodore's declaration of a one-third ownership of the Kolb Trust, with an estimated value of $900,000, was not motivated by a perceived need for full disclosure.[10] Moreover, even if there were such an obligation, Theodore did not fulfil it, given that he incorrectly described the nature of the interest.

Theodore Kolb's personal financial statements thus stand in a far different light from his withdrawals from Hilde Kolb's accounts. Similar to the beneficiaries in *In re Estate of Goshen* and *In re Estate of Murphy,* Theodore received a benefit because the inclusion of the trust property in the application "greatly increased his net worth and also increased the likelihood that his loan would be approved." *Cassel,* 267 B.R. at 865. Like the beneficiaries in *In re Estate of Lyng* and *Leipham,* Theodore did not passively hold his contingent interest, but actively used the property to apply for, and accept, needed bank loans. Indeed by not listing the interest as contingent, he misrepresented the interest as one that could not be disclaimed. It would be odd to hold that an interest whose true contingent nature he covered up when it

---

10. We note briefly that our decision does not address the hypothetical concern raised by both the District and Bankruptcy Courts regarding a beneficiary loan applicant who does not disclose a future interest, but where a loan officer "approves a loan on the basis of the officer's *knowledge* that the applicant stands to inherit a substantial sum of money." *Cassel,* 267 B.R. at 866. As we noted, our analysis of acceptance under § 285(b)(3) turns on the particular actions of the beneficiary demonstrating dominion or control.

was to his advantage to do so, was not a benefit that was not thereby accepted.[11]

Finally, including the trust property in the financial statements was not a *de minimis* use within the meaning of *Mapes.* By listing his interest, Theodore was able to make his loan application more attractive to the bank, ultimately obtaining nearly $775,000.00 in personal and professional financing. 15 F.3d at 141. Moreover, Theodore's filings stretched over a five-year period, far longer than the one-year possession of an estate automobile in *Mapes. Id.* Each of these actions demonstrate "some measure of dominion or control" by Theodore Kolb over the interest, outside the limitations of the *de minimis* exception. *Cassel,* 267 B.R. at 866.

We therefore hold that Theodore Kolb's declaration of an interest in the Kolb Trust properties on his numerous loan applications constituted an acceptance of his contingent interest in those properties. That acceptance of "part" of the contingent interest thus made his later disclaimer ineffective under § 285(b)(3) of the California Probate Code, because acceptance of a part of, or benefit under, the interest constitutes acceptance of the interest in its entirety. Cal. Prob.Code § 285(b)(3) ("[A] beneficiary has accepted an interest if ... [t]he beneficiary ... accepts the interest or part thereof ....").

### III. CONCLUSION

We reverse the order of the District Court and remand with instructions that it remand the matter to the Bankruptcy Court. Theodore Kolb's contingent interest is an asset of the bankruptcy estate.

The Bankruptcy Court shall proceed in a manner consistent with this opinion.[12]

**REVERSED AND REMANDED WITH INSTRUCTIONS.**

---

11. We need not decide the effect, if any, of expressly denoting an interest as contingent, or reserving the right to disclaim a declared interest, as neither issue is presented in this case.

12. We also deny without prejudice to renewal after remand to the Bankruptcy Court the appellant's motion for substitution contained in the suggestion of death filed under Federal Rule of Appellate Procedure 43(a).