

**ORDERED PUBLISHED**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# OF THE NINTH CIRCUIT

| | |
|---|---|
| In re:<br>JAMES CHRISTOPHER PATOW,<br>　　　　　Debtor. | BAP No.  CC-20-1285-GTL<br><br>Bk. No. 8:18-bk-10971-ES |
| LINDA PATOW; LINDA PATOW, as<br>Trustee of the Alvin and Linda Patow<br>2006 Trust,<br>　　　　　Appellant,<br>v.<br>RICHARD A. MARSHACK, Trustee;<br>JAMES CHRISTOPHER PATOW,<br>　　　　　Appellees. | Adv. No. 8:19-ap-01061-ES<br><br><br>**OPINION** |

Appeal from the United States Bankruptcy Court
for the Central District of California
Erithe A. Smith, Bankruptcy Judge, Presiding

J. Edward Switzer, Jr. argued for appellant; David Edward Hays of
Marshack Hays LLP argued for appellee Richard A. Marshack, Trustee.


Before: GAN, TAYLOR, and LAFFERTY, Bankruptcy Judges.

Opinion by Judge Gan
Concurrence by Judge Lafferty

GAN, Bankruptcy Judge:

## INTRODUCTION

This appeal requires us to determine whether documents executed by a trust beneficiary, which purport to waive his interest under the trust, constitute a voidable transfer under state law or a valid disclaimer.

Chapter 7[1] debtor James Patow ("James")[2] was a beneficiary of a trust created by his parents Alvin and Linda Patow. Nearly four years prior to filing his bankruptcy petition, James executed two documents stating that he waived his interest under the trust and that he gave consent for Linda, the sole trustee, to disburse the trust assets to herself.

Chapter 7 trustee Richard Marshack ("Trustee") filed an adversary complaint alleging that the documents constituted a voidable fraudulent transfer. The bankruptcy court agreed and granted Trustee's motion for summary judgment after determining that James accepted his interest and therefore could not validly disclaim it under state law.

The material facts are not in dispute, and resolution of this appeal turns on the purely legal question of whether the documents constitute a

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

[2] Because this appeal involves other family members named Patow, we refer to them by their first names. No disrespect is intended.

voidable transfer under the California Uniform Fraudulent Transfers Act ("UFTA"), Cal. Civ. Code §§ 3439-3449.[3]

We hold that the documents do not evidence an acceptance. They constitute a valid disclaimer which is not a voidable transfer under the UFTA as a matter of law. We REVERSE and REMAND with instruction to enter judgment in favor of Linda, and we publish to emphasize the type of conduct required to constitute an implied acceptance of a beneficial interest.

## FACTS

### A.    The Patow Trust

In 2006, James's parents established the Alvin Patow and Linda Patow 2006 Trust (the "Patow Trust"), for the purpose of leaving their property to their children, James and Jennifer, while minimizing probate and estate tax costs. Later, Alvin and Linda amended the Patow Trust to provide for 100% of the trust estate to pass to Linda's sister Patricia Meredith if neither James nor Jennifer survived them.

The Patow Trust was revocable during the lives of the settlors and provided that upon the death of either spouse the trust estate would be split between two trusts designated as the Survivor's Trust and the Bypass

---

[3] California amended the UFTA and retitled it as the Uniform Voidable Transactions Act, effective January 1, 2016. Because the alleged transfer took place before the effective date, we apply the provisions of the UFTA in effect at the time. *See* Cal. Civ. Code § 3439.14.

Trust. The Survivor's Trust would remain revocable during the lifetime of the surviving spouse, while the Bypass Trust would become irrevocable.

Alvin died in 2007 and Linda became the sole trustee of the Patow Trust. In accordance with its terms, she transferred Alvin's share of the marital estate, up to the maximum estate tax exemption amount, into the Bypass Trust. The transfer consisted of a 5-unit apartment building and a 51% interest in a 4-unit apartment building located in Los Alamitos, California.

Article 7 of the Patow Trust requires the trustee to distribute all income of the Bypass Trust to the surviving spouse at least annually, and states that the "[t]rustees may distribute to the Surviving Spouse all or any portion of the principal of the Bypass Trust for the Surviving Spouse's reasonable health, education, maintenance, and support in his or her accustomed manner of living." The Patow Trust provides that upon the death of the surviving spouse, the remaining assets of the Bypass Trust are to be distributed to the beneficiaries, James and Jennifer.

The Patow Trust also contains spendthrift provisions applicable to the Bypass Trust. Section 20.1 provides, "[a] beneficiary's interest in the trust income or principal shall not be subject to his or her voluntary transfer. Specifically, a beneficiary . . . may not sell, transfer, assign, alienate, encumber, hypothecate, or otherwise dispose of his or her interest in trust income or principal." Section 20.2 includes a spendthrift provision prohibiting involuntary transfers:

4

[A] beneficiary's interest shall not be subject to the beneficiary's liabilities, contracts, debts, or other obligations; to the claims of the beneficiary's creditors or assignees or others; to the enforcement of a money judgment against the beneficiary; or to assignment, attachment, anticipation, levy, execution, garnishment, pledge, claims arising from bankruptcy proceedings, or any other form of legal or equitable levy or lien or legal process or proceedings.

The spendthrift provisions do not prohibit a beneficiary from disclaiming or renouncing any interest in the Bypass Trust. Section 8.1 authorizes disclaimers and states that "any person granted any right, title, interest, benefit, privilege, or power" under the Patow Trust "may at any time renounce, release, or disclaim all or any part of that right, title, interest, benefit, privilege, or power, including his or her right, title, and interest in and to trust income or principal."

## B.     The Agreement And Consent To Exercise Discretion

In 2014, Linda's tax advisor and estate attorney advised her that the Bypass Trust was no longer necessary to reduce taxes on her estate. Linda's attorney advised her to use her discretion under the Patow Trust to transfer the Bypass Trust property to herself, then to the Survivor's Trust. Although he believed that consent was not required, Linda's attorney recommended that she inform the beneficiaries of her decision to prevent confusion, disagreements, or litigation.

The attorney prepared a document titled "Agreement" which included as exhibits an "Exercise of Discretion" and a "Consent to Exercise

5

of Discretion" ("Consent EOD"). The Agreement provides that Linda would execute the Exercise of Discretion, which states that she would transfer the principal of the Bypass Trust to herself pursuant to her discretion under the Patow Trust. The Agreement also provides that James and Jennifer would execute the Consent EOD, and that by doing so, they would waive any and all rights they may have under the terms of the Patow Trust. The Consent EOD signed by James states:

> I, James Christopher Patow, as a beneficiary of the Alvin and Linda Patow 2006 Trust – Bypass Trust, established June 23, 2006, do hereby consent to the Exercise of Discretion by the Trustee of said Trust, to invade the principal of said Trust and return it all to Linda E. Patow.

James and Jennifer acknowledged that they did not receive any consideration for signing the Agreement or Consent EOD and that they were not promised anything from Linda's trusts in the future. James and Linda each signed the Agreement—and James signed the Consent EOD—on May 22, 2014.[4] Pursuant to the Exercise of Discretion, Linda transferred the assets from the Bypass Trust to herself in June 2014.

At the time James executed the documents, default judgment had been entered against him and in favor of Asset Acceptance, LLC in the amount of $16,583.68. In September 2015, Interinsurance Exchange of Automobile Club ("Auto Club") filed suit against James based on an automobile accident which occurred in 2012. Auto Club obtained default

---

[4] Jennifer executed the documents on May 13, 2014.

judgment against James in May 2017. Both judgments remained unsatisfied at the time of James's bankruptcy petition.

**C.      The Adversary Complaint And Motion For Summary Judgment**

James filed a chapter 7 petition on March 21, 2018. In May 2019, Trustee filed his first amended complaint against James and Linda. He alleged that James transferred his interests in the Bypass Trust to Linda, which constituted a fraudulent transfer made with actual intent under § 548(a)(1)(A) and a constructive fraudulent transfer under § 548(a)(1)(B). He also alleged that James transferred his interests in violation of the UFTA, California Civil Code §§ 3439.04(a)(1)-(2) and 3439.05. James and Linda denied that the Agreement and Consent EOD constituted a transfer, and Linda asserted an affirmative defense that the documents were a disclaimer which cannot be a voidable transfer under state law.

In August 2020, Trustee filed a motion for summary judgment, or alternatively for summary adjudication, on his fraudulent transfer claims and on Linda's affirmative defenses. Trustee argued that James had a vested interest in the Bypass Trust which he transferred to Linda for no consideration. Trustee asserted that Linda admitted that she did not use the Bypass Trust principal to pay expenses related to her health, education, maintenance, or support, and therefore she lacked authority to invade the principal without James's consent. Regarding Linda's affirmative defense, Trustee argued that James did not validly disclaim because he exercised control over his interest by directing that it would go to Linda instead of

other beneficiaries. Trustee argued that entering into the Agreement qualified as an acceptance and prevented James from disclaiming his interest under California Probate Code § 285.

Linda opposed the motion and argued that the Agreement did not constitute a transfer of an interest in property. She maintained that James's consent was unnecessary for her to use her discretion as trustee to invade the principal of the Bypass Trust, and the Agreement merely operated as a disclaimer of his interest. Linda argued that Trustee's claims under § 548 were barred by the statute of limitations, and under state law a disclaimer does not constitute a voidable transfer. James did not file an opposition.

After a hearing, the bankruptcy court granted Trustee's motion in part and denied it in part. The court granted summary adjudication in favor of the defendants on Trustee's § 548 claims because the alleged transfer did not occur within two years of the petition date. The court granted summary judgment in favor of Trustee on all elements, except intent, of the actual fraudulent transfer claim under California Civil Code § 3439.04(a)(1). Finally, the court granted summary judgment on Trustee's claim for constructive fraudulent transfer under California Civil Code §§ 3439.04(a)(2) and 3439.05.

The bankruptcy court determined that the Agreement did not direct that James's interest go to Linda. However, the court held that by executing the Consent EOD, James accepted his interest in the Bypass Trust before the alleged disclaimer in the main body of the Agreement.

The court reasoned that by using his status as a beneficiary to consent, James provided Linda with more than a de minimis benefit because she would not otherwise have been able to invade the principal of the Bypass Trust for reasons other than her health, education, maintenance, or support. And, if the alleged disclaimer had been immediately effective, James could not have executed the Consent EOD "as a beneficiary."

The bankruptcy court held that the Agreement constituted a transfer of James's interest because he "waived" his beneficial interest, which satisfied the broad definition of "transfer" in § 101(54)(D).

## D.    The Motion For Reconsideration

After the bankruptcy court entered its order partially granting Trustee's motion for summary judgment, Linda filed a motion for reconsideration pursuant to Civil Rule 59(e), made applicable by Rule 9023. She argued that the Consent EOD could not be a prior acceptance because it was executed simultaneously with the Agreement and it was intended to be a unified transaction. Linda again argued that James's consent did not give her any authority that she did not already have under the terms of the Patow Trust. She requested certification of the order granting partial summary judgment as a final order under Civil Rule 54(b), made applicable by Rule 7054, should the court deny her motion for reconsideration.

In opposition, Trustee argued that Linda did not have power to invade the principal of the Bypass Trust, and contrary to the terms of the

9

Patow Trust, the Agreement and Consent EOD signed by James and Jennifer purported to confer on Linda such authority. Trustee maintained that James had a vested interest in property of the Bypass Trust, which Linda acquired pursuant to the Agreement and Consent EOD, and therefore it constituted a transfer.

In her reply, Linda reiterated that the Agreement and Consent EOD should be construed as a single transaction and that they evidenced a disclaimer. She argued that, contrary to Trustee's argument and the court's ruling, James had no power to unilaterally increase Linda's powers as trustee. Finally, she argued that pursuant to the spendthrift provisions applicable to the Bypass Trust, James had no ability to transfer his interest except by disclaimer.

The bankruptcy court denied Linda's motion for reconsideration but certified the order granting partial summary judgment as a final order under Civil Rule 54(b). Linda timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(H). The bankruptcy court certified the partial summary judgment as a final order under Civil Rule 54(b). Thus, we have jurisdiction under 28 U.S.C. § 158. *Belli v. Temkin (In re Belli)*, 268 B.R. 851, 856 (9th Cir. BAP 2001).

10

## ISSUES

Whether the bankruptcy court erred by determining that the documents evidenced an acceptance by James of his beneficial interest and not a disclaimer.

Whether the bankruptcy court erred by granting partial summary judgment in favor of Trustee.

## STANDARDS OF REVIEW

We review the bankruptcy court's grant of summary judgment de novo. *Medina v. Stadtmueller (In re Medina)*, 619 B.R. 236, 240 (9th Cir. BAP 2020). We also review de novo whether a document is a valid disclaimer. *See Est. of Goshen*, 167 Cal. App. 3d 97, 100 (1985).

Whether a beneficiary has accepted his beneficial interest through conduct is "a fact-sensitive inquiry that centers on the conduct of the beneficiary, and the result of such conduct." *Cassel v. Kolb (In re Kolb)*, 326 F.3d 1030, 1039 (9th Cir. 2003). But where the only conduct alleged to support acceptance is a written document, we review the question de novo. *See Mitri v. Arnel Mgmt. Co.*, 157 Cal. App. 4th 1164, 1169-70 (2007) ("The interpretation of a written document where extrinsic evidence is unnecessary is a question of law . . ." (cleaned up)).

Under de novo review, we look at the matter anew, giving no deference to the bankruptcy court's determinations. *In re Medina*, 619 B.R. at 240.

11

## DISCUSSION

### A.    Summary Judgment Standard

Civil Rule 56(a), made applicable by Rule 7056, provides that summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In reviewing summary judgment, we must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Cnty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1154 (9th Cir. 2001) and *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). When the material facts are not in dispute, our only function is to determine whether the bankruptcy court correctly applied the law. *Universal Health Servs., Inc. v. Thompson*, 363 F.3d 1013, 1019 (9th Cir. 2004).

The material facts are not in dispute and resolution of this appeal turns on our interpretation of the Agreement and the Consent EOD. Linda argues that the Agreement was a disclaimer under state law and the Consent EOD was not a prior acceptance of James's interest in the Bypass Trust. We agree.

### B.    Voidable Transfers Under State Law

Section 544(b) permits a bankruptcy trustee to avoid any transfer of a debtor's interest in property that would be voidable under state law. *Kupetz v. Wolf*, 845 F.2d 842, 845 (9th Cir. 1988). To determine whether Trustee was

entitled to avoidance as a matter of law under the UFTA, we must look to state law. *Krommenhoek v. A-Mark Precious Metals, Inc. (In re Bybee)*, 945 F.2d 309, 315 (9th Cir. 1991).

Under the UFTA, a "transfer" is defined as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease, license, and creation of a lien or other encumbrance." Cal. Civ. Code § 3439.01(m).[5] But California law specifically provides that a disclaimer of a beneficial interest is not a fraudulent transfer under the UFTA. Cal. Prob. Code § 283.

California law defines "disclaimer" as "any writing which declines, refuses, renounces, or disclaims any interest that would otherwise be taken by a beneficiary." Cal. Prob. Code § 265. A disclaimer must: (1) be in writing; (2) be signed by the disclaimant; (3) identify the creator of the interest; (4) describe the interest disclaimed; and (5) state the disclaimer and its extent. Cal. Prob. Code § 278. However, a beneficiary cannot

---

[5] We acknowledge that one might question whether James's beneficial interest in the Bypass Trust could constitute an "asset" for purposes of the UFTA, given that the parties agree it was subject to the Bypass Trust's spendthrift provisions, and the definition of "asset" excludes property "to the extent it is generally exempt under nonbankruptcy law." Cal. Civ. Code § 3439.01(a)(2). The Bypass Trust does not clearly provide for any expected payments of income or principal to James which could be subject to claims of a general creditor under California Probate Code §§ 15301(b), 15306.5, or 15307, but this issue may be complicated by *Carmack v. Reynolds*, 2 Cal. 5th 844 (2017). However, because we agree that the documents evidence a disclaimer, which is not a voidable transfer, we do not reach the question of whether James's beneficial interest is an "asset" subject to the UFTA.

disclaim an interest after he has accepted it. Cal. Prob. Code § 285; *In re Kolb,* 326 F.3d at 1039.

## C. The Documents Do Not Evidence Acceptance Of The Beneficial Interest.

"Acceptance" is the "act of a person to whom a thing is offered or tendered by another, whereby he receives the thing with the intention of retaining it." *Black's Law Dictionary* (6th ed. 1990). "In other words, acceptance denotes both receipt, and the intent to retain." *In re Kolb*, 326 F.3d at 1037. Acceptance can be shown by express or implicit actions. *Id.*

The California Probate Code specifies several actions which are sufficient to show express acceptance of a beneficial interest, including "voluntary assignment, conveyance, encumbrance, pledge, or transfer of the interest . . . " Cal. Prob. Code § 285(b). In addition to these examples, acceptance can arise from any action that "would portend immediately tangible results which would serve the interests of" the beneficiary. *Est. of Sagal*, 89 Cal. App. 3d 1003, 1014 (1979).

Section 285(b)(3) also includes a "catch-all" provision which prohibits a disclaimer where "[t]he beneficiary, or someone acting on behalf of the beneficiary, accepts the interest or part thereof or benefit thereunder." The Ninth Circuit has interpreted this provision as prohibiting disclaimer where acceptance is through "conduct by a beneficiary implying an intent to direct or control the property in a manner that conveys more than a *de*

14

*minimis* benefit to the beneficiary or a third party." *In re Kolb*, 326 F.3d at 1039.

Whether the acceptance is shown by express or implicit actions, the analysis must focus on the conduct of the beneficiary and the result of that conduct. *Id.* It is a functional inquiry, and not every action by a beneficiary that results in a benefit to a third party will suffice. The beneficiary must exercise dominion or control over the interest in a manner that is inconsistent with a later renunciation. *See id.* (citing *Mapes v. United States*, 15 F.3d 138, 141 (9th Cir. 1994), *abrogated on other grounds by Drye v. United States*, 528 U.S. 49 (1999)).

Here, the bankruptcy court held, and we agree, that the documents do not constitute an express acceptance because they do not provide for an assignment or transfer of James's interest to Linda. *See Heritage Pac. Fin., LLC v. Monroy*, 215 Cal. App. 4th 972, 988 (2013) ("An assignment is a manifestation to another person by the owner . . . indicating his intention to transfer, without further action or manifestation of intention . . . to such other person, or to a third person." (cleaned up)).

The court, however, further held that the Consent EOD demonstrated James's implicit acceptance because it provided Linda with the ability to invade the principal of the Bypass Trust. But whatever authority Linda had was defined and fixed by the trust instrument and by state law. Cal. Prob. Code § 16200. As a beneficiary, James had no authority to grant Linda

15

additional powers over the principal of the Bypass Trust. It other words, the Consent EOD did not confer any trust power or benefit on Linda.

More importantly, acceptance requires that the beneficiary engage in conduct which, expressly or implicitly, demonstrates an intent to receive and retain the beneficial interest. *In re Kolb*, 326 F.3d at 1037. Trustee does not identify any benefit that James received by waiving his interests or consenting to Linda's exercise of discretion, and he completely fails to provide evidence of an intent to retain the beneficial interest.

Instead, the Consent EOD is entirely consistent with James's renunciation of his beneficial interest. The document merely states that James consents to Linda's invasion of trust principal by the authority she claimed under the Patow Trust. It operates as a waiver of James's right to sue Linda for breach of trust if invading the principal of the Bypass Trust was beyond her powers as trustee. But, because James's right to sue for breach of trust is based solely on his status as beneficiary, such right is necessarily waived when he disclaims his beneficial interest. *See* Cal. Prob. Code § 16420.

Nothing in the Agreement or Consent EOD demonstrates James's control over his beneficial interest, and executing the documents was not conduct which produced a tangible benefit to James or a third party. The documents are consistent with James's renunciation of his interest and do not constitute an acceptance of that interest.

**D.     James Validly Disclaimed His Interests Under the Bypass Trust.**

After determining that James accepted his interest, the bankruptcy court concluded that the Agreement demonstrated a voidable transfer because by "waiving" his interest, James transferred it to Linda.[6] We disagree.

The Agreement is in writing, was signed by James, and was provided to Linda, the trustee of the Patow Trust. It states that by agreeing to the Exercise of Discretion, James and Jennifer "hereby waive any and all rights that they may have under the terms of the trust, including . . . The right to receive the assets of the Bypass Trust upon the death of Linda E. Patow."

Although the Agreement is drafted as a contract between the parties, Trustee admits that James and Jennifer did not receive anything in exchange for waiving their interests under the Bypass Trust. The Agreement is essentially a unilateral action by James and Jennifer to refuse

---

[6] The effect of California Probate Code § 285 is that a purported disclaimer made after an acceptance has no effect. *See In re Kolb*, 326 F.3d at 1036 n.3 (holding that a disclaimer was "ineffective" and stating, "[b]ecause we conclude that [the beneficiary] accepted the benefits of his contingent interest and thus could not disclaim it, we need not reach [plaintiff's] alternative argument that the disclaimer constituted a fraudulent transfer"); *Sagal*, 89 Cal. App. 3d at 1014 (holding that a renunciation after acceptance was "invalid").

Thus, if the Consent EOD was a prior acceptance of James's interest in the Bypass Trust as the court held, it would have rendered the disclaimer ineffective. James would have retained his beneficial interest, and there would be no transfer to avoid. Additionally, we doubt whether a document attached as an exhibit and executed contemporaneously with a purported disclaimer could constitute a "prior" acceptance. However, we need not reach these issues because we conclude that the Consent EOD was not an acceptance of James's beneficial interest in the Bypass Trust.

their interests. This is sufficient to constitute a disclaimer under California law. *See* Cal. Prob. Code § 275; *Goshen*, 167 Cal. App. 3d at 102 (distinguishing disclaimers from assignments and explaining that a disclaimer consists of a unilateral action by the beneficiary); *Est. of Murphy*, 92 Cal. App. 3d 413, 423-24 (1979) (same).

Trustee argues that the Agreement was not a disclaimer under state law because it provided for James to "waive" his interest rather than "release," "renounce," or "disclaim" it. Trustee also suggests that James assigned his interest to Linda because a disclaimer would cause the interests to go to the alternate beneficiary, Patricia Meredith, instead of to Linda.

Under California law, a disclaimer is "any writing" that declines, refuses, renounces, or disclaims any interest that the beneficiary would otherwise take. To "waive" an interest is to "abandon, throw away, renounce, repudiate, or surrender [it] . . . . A person is said to waive a benefit when he renounces or disclaims it . . . ." *Black's Law Dictionary* (5th ed. 1979). The disclaimer statute does not require a disclaimant to use magic words. James manifested his intent to disclaim by "waiving" his interests under the Bypass Trust.

Finally, we agree that the disclaimer caused the beneficial interests to pass to the contingent beneficiary, Patricia Meredith, but Ms. Meredith is not a party to this case, and Trustee cannot assert her rights.

18

Because we hold that the Agreement is a valid disclaimer of James's interest, it is not a voidable transfer as a matter of law. Trustee cannot prevail on his complaint and Linda is entitled to judgment in her favor on her affirmative defense.

## CONCLUSION

Based on the foregoing, we REVERSE the bankruptcy court's grant of partial summary judgment and REMAND with instructions to enter judgment in favor of Linda.

Concurrence begins on next page.

LAFFERTY, Bankruptcy Judge, concurring:

I am delighted to join in my colleagues' disposition of this matter, and to endorse their careful and meticulous reasoning on a question involving the application of sections of the California Probate Code dealing with interests in a testamentary trust, an area of non-bankruptcy law that can be a bit arcane, to a bankruptcy trustee's avoiding powers. I write separately to emphasize two points: (1) the analysis whether a beneficiary has disclaimed an interest in a trust under California law should ordinarily be straightforward, and should begin (and frequently end) with the disclaimer itself; and (2) the test whether a beneficiary has "accepted" an interest in a trust such that a disclaimer would be ineffective is functional—did the beneficiary voluntarily accept and retain a benefit under the trust?—and should not turn, as this matter turned in the bankruptcy court, and as the bankruptcy trustee urges it should turn on appeal, on an *a priori* logic test that conflates acceptance with acknowledgment of a potential interest.

As my colleagues correctly state, the only real question posed by this appeal is whether the Agreement and the Consent EOD together constitute a prior implied or deemed acceptance of the benefits of a trust that would invalidate an otherwise effective disclaimer.

This focus is important, and not at all controversial analytically, because the law in California concerning what constitutes an effective disclaimer and the consequence of a disclaimer is straightforward.

It is absolutely clear under California law that a beneficiary may disclaim an interest in a trust. Cal. Prob. Code § 275. It is also clear that the requirements for a disclaimer are straightforward and relatively simple: "The disclaimer shall be in writing, shall be signed by the disclaimant, and shall: (a) Identify the creator of the interest. (b) Describe the interest to be disclaimed. (c) State the disclaimer and the extent of the disclaimer." Cal. Prob. Code § 278. And, as my colleagues correctly determine, all such requirements were met here. Critically, it is equally clear that an effective disclaimer cannot, by definition, constitute a fraudulent transfer. Cal. Prob. Code § 283.

The Trustee's suggestion that the use of the word "waiver" in the Agreement should automatically disqualify that document as a disclaimer is unsupported under California law; the statute does not create, nor would the case law support, such an arbitrary result completely contrary to the intent of the parties, based solely on an otherwise innocuous word choice. Moreover, such a result would also impose a level of nuance and ambiguity into what is otherwise a simple and straightforward test without any indication that the California legislature intended to so complicate this question. This portion of the inquiry is simply not controversial, and the Trustee's attempts to complicate this question are meritless.

The question whether a beneficiary has implicitly or indirectly accepted a benefit under a trust is admittedly one subject to greater nuance and potential uncertainty—though not at all for the reasons that the Trustee suggests.

California Probate Code § 285(a) states that a beneficiary may not disclaim an interest after having accepted it; subsections (b)(1)-(3) define what constitutes an acceptance. As my colleagues correctly point out, the only basis for an argument that the beneficiary has accepted the interest in the subject trust is the "catch all" provision of § 285(b)(3), the beneficiary "accepts the interest or part thereof or benefit thereunder," i.e., whether the Agreement and the Consent EOD manifest an acceptance of the interest or benefit under the Bypass Trust.

Review of the pertinent case law demonstrates that the test for whether one has accepted an interest in a trust is necessarily flexible, but consistently functional: did the beneficiary voluntarily obtain and retain the interest so as to have received a benefit thereunder? *See Cassel v. Kolb (In re Kolb)*, 326 F.3d 1030, 1039 (9th Cir. 2003) ("[T]he California legislature intended to prohibit the disclaimer of an interest accepted through conduct by a beneficiary implying an intent to direct or control the property in a manner that conveys more than a *de minimis* benefit to the beneficiary or a third party. Application of this standard is a fact-sensitive inquiry that centers on the conduct of the beneficiary, and the result of such conduct." (Citation omitted)).

The test is necessarily flexible because, as the cases make clear, one may accept a benefit under an interest in a trust in ways far more subtle than receipt of a payment on account of trust income or principal, or even assigning or borrowing against the value of one's interest.

*In re Kolb* is illustrative of this point. In *Kolb*, the Ninth Circuit reversed the bankruptcy court's determination that a beneficiary had not accepted an interest under a trust when he listed that interest as an asset on a successful loan application. In determining that the beneficiary had accepted the interest through his conduct, the court noted both that (a) there was no "obligation" to list the interest in the trust on the loan application (i.e., the bankruptcy court had erred in determining that the beneficiary was compelled to disclose the interest, such that the disclosure, and the ensuing benefit, were not voluntary), and (b) the beneficiary had inaccurately (but knowingly) listed the interest in the trust as a present, fully-vested interest, as opposed to the less valuable contingent interest that it was in fact. *In re Kolb*, 326 F.3d at 1040. But more fundamentally, the court ruled that the beneficiary's listing of the interest in the trust as an asset constituted the beneficiary's acceptance of the interest because the beneficiary thereby used the interest to obtain a benefit, albeit a somewhat indirect one, from his interest in the trust. *Id.* at 1041.

And though the court acknowledged that the determination whether a beneficiary had accepted an interest via a "use" of the interest in the trust depended on the facts and circumstances presented, and was thus a flexible

4

test, subject to a degree of parsing, it was also a test that was fundamentally and necessarily functional: without the obtaining and retention of an ascertainable benefit, there could be no acceptance.

The Trustee argues that the Consent EOD comprises an acceptance of the beneficiary's interest under the subject trust because that document constitutes an acknowledgment of the beneficiary's power to withhold consent to the transaction set forth in the Agreement, i.e., permitting the trustee to transfer to herself the ability to terminate the trust. This argument is based on the premise that such acknowledgment was both necessary to the effectiveness of the Agreement and entered into prior thereto. In logic terms, it is a sort of an *a priori* standard: the pertinent transaction was dependent on a prior acknowledgment of a right, which brought that right into existence. Stated more simply, the Trustee argues essentially that in order to have arrived at "B," one needed to have traveled through "A." To which the equally simple reply is "Well, maybe. But to what is that pertinent?"

There is nothing in the Trustee's argument that identifies any transaction that is remotely akin to the voluntary obtaining of a benefit under the trust, let alone retention of any such benefit. Rather, the entire "transfer" of the beneficiary's interest is premised on the beneficiary's putative deemed acceptance of the interest via an acknowledgment of a power in the beneficiary that, as my colleagues correctly point out, is irrelevant to the trustee's powers, and that on no theory corresponds to the

functional, ascertainable, and real-world requirement that the beneficiary obtain and retain a benefit on account of such interest. The language of California Probate Code § 285(b)(3) may be somewhat open-ended, but the cases interpreting and applying that provision have set forth a flexible but functional test, and one that does not turn on logical assumptions that have no reference to the real world. Accepting the standard that the Trustee here proffers for whether a beneficiary has accepted the interest in a trust would lead to arbitrary results and to enormous uncertainty on questions on which the affected parties deserve the predictability that the California legislature, and the courts, have clearly sought to provide them.

I concur in the decision.